**In re DILLARD DEPARTMENT STORES, INC., Relator.**

No. 08–04–00262–CV.

Court of Appeals of Texas, El Paso.

Nov. 24, 2004.

---

John P. Mobbs, El Paso, for real party in interest.

Robert A. Valadez, Shelton & Valadez, Nissa M. Sanders, Crofts & Callaway, P.C., San Antonio, for relator.

Linda Y. Chew, El Paso, for respondent.

Before Panel No. 4 BARAJAS, C.J., LARSEN, and McCLURE, JJ.

## OPINION

SUSAN LARSEN, Justice.

Dillard Department Stores, Inc. (Dillard's) seeks a writ of mandamus to compel its former employee, Delia Garcia, to arbitrate her retaliatory discharge claim. Because Dillard's failed to establish an agreement to arbitrate, we find the trial court did not abuse its discretion in refusing to compel arbitration. We therefore deny the requested writ of mandamus.

### FACTUAL AND PROCEDURAL BACKGROUND

Delia Garcia worked at the Dillard's store in Sunland Park Mall. She was fired

after she filed a claim for workers' compensation benefits. Garcia sued Dillard's, alleging retaliatory discharge. Dillard's filed a motion to compel arbitration, stating that it has a mandatory program that requires all disputes related to employment termination to be resolved through binding arbitration. Attached to the motion were affidavits by Yolanda Maese and Scott McMurtrie.

Maese, a sales manager at the Sunland Park store, averred that in August 2000, Dillard's implemented a "Fairness in Action Program," which requires that all disputes related to employment termination be submitted to binding arbitration. On August 27, 2000, at 10 a.m., she assisted in conducting a mandatory meeting at which the arbitration program was explained to employees. At the meeting, employees were given information packets that detailed the program.

McMurtrie averred that he was the custodian of records for Dillard's. Attached to his affidavit were payroll records showing that Garcia was "on the clock" from 9:48 a.m. until 1:06 p.m. on the day of the meeting. Also attached to McMurtrie's affidavit as Exhibit 1A was the information packet that was distributed at the meeting.

The information packet consists of two documents. The first, entitled "The Dillard's Fairness in Action Program," is a six-page summary of the arbitration program. The first page of this document states, "By accepting or continuing employment with Dillard's, you have agreed to accept the Program known as the Agreement to Arbitrate Certain Claims." The second document included in the information packet is entitled "Current Associate Agreement to Arbitrate Certain Claims." The first page of this document is an acknowledgment form that states, "EFFECTIVE August 1, 2000, all employees ... employed at the stores wherein

this Agreement has been distributed shall be subject to the RULES OF ARBITRATION ... described below. Employees are deemed to have agreed to the provisions of the RULES by virtue of accepting employment ... and/or continuing employment...." Below this statement are signature blocks for the employee and a witness to sign, acknowledging that the employee received a copy of the "Agreement to Arbitrate and Rules of Arbitrate [sic]." The remainder of the document, commencing on page three, is entitled "Rules of Arbitration." The Rules provide that claims for "[r]etaliation for filing a protected claim for benefits (such as workers' compensation)" are covered under the arbitration program.

Garcia filed a response to the motion to compel arbitration. She argued that the motion should be denied because she did not agree to arbitration and because the consideration for the purported agreement was illusory. Attached to the response was an affidavit by Garcia, which supported her argument that she did not agree to arbitration. The affidavit states:

> In the fall of 2000 I was presented with a document by my employer that I was asked to sign. I was presented the document during a sales meeting at which time the arbitration agreement was not explained. I read the document which provided for a short explanation of the program to arbitrate claims against Dillard's. The document was never explained to me and was not the basis of the meeting I attended when it was presented. I refused to sign the agreement because I did not agree to be bound by terms of the agreement. I was not the only employee who refused to sign the agreement. I was never told or instructed by any employee of Dillard's that if I continued my employment I would be bound by the terms of any

arbitration agreement. I was never presented with a copy of The Dillard's Fairness in Action Program or Rules of Arbitration which is attached as Exhibit "A" to Defendant's Motion to Compel Arbitration.

The trial court conducted a hearing on Dillard's motion to compel. At the hearing, McMurtrie testified that he is the operations manager at the Sunland Park store. He was not at the August 27 employee meeting, but he believed that Garcia attended it because the payroll records showed that she clocked in right before the meeting started at 10 a.m. August 27 was a Sunday, and employees would not normally be on the clock at that time on a Sunday. The store did not open until 12 p.m. and there would not be any other business to be conducted on Sunday morning before the store opened.

Although he was not at the August 27 meeting, McMurtrie testified regarding how such meetings were typically run. He stated that they would "go over the two documents, the fairness-in-action program and then, of course, the actual arbitration documents." He testified, "We would give them the fairness-in-action program and also the arbitration packet. . . ." McMurtrie testified that Garcia's personnel file did not contain a signed copy of the acknowledgment form. In reference to the statement in Garcia's affidavit that she was "provided a short explanation of the program to arbitrate claims," McMurtrie testified that the only documents that would have been presented to employees regarding the arbitration program were the two documents that were included in Exhibit 1A to the motion to compel.

McMurtrie acknowledged that the rules for arbitration had been changed at least once since the August 27, 2000 meeting was held and that the employees were not informed of the changes. But he also testified that employees are bound by the rules that were in effect at the time that they were presented with the program.

Maese testified that at the August 27 meeting, employees were given copies of the documents included in Exhibit 1A and were told that by continuing to work for Dillard's they were effectively agreeing to arbitrate any claims related to termination of employment. She did not recall anyone refusing to sign the acknowledgment form. Like McMurtrie, Maese was not aware of any other reason for Garcia to have been clocked in at 10 a.m. on a Sunday morning other than to attend the meeting. But she did not remember seeing Garcia at the meeting, which over fifty people attended. Also like McMurtrie, she was not aware of any document that would provide a short explanation of the arbitration program other than the documents included in Exhibit 1A.

The trial court denied Dillard's motion to compel, and this proceeding ensued.

### Standard of Review

■ We may issue a writ of mandamus if: (1) the trial court clearly abused its discretion and (2) there is no other adequate remedy at law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding).

■ The relator has the burden of establishing that the trial court abused its discretion. *Id.* at 840. A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to be a clear and prejudicial error of law. *Id.* With respect to the resolution of factual issues, this means that we may not substitute our judgment for that of the trial court, even if we would have decided the issue differently. *Id.* at 839–40. Instead, we may not overturn the trial court's decision unless that court could reasonably

have reached only the opposite decision. *See id.* at 840. With respect to the resolution of legal issues, our review is much less deferential. *Id.* The trial court has no discretion in determining what the law is or in applying the law to the facts. *Id.* Therefore, a clear failure by the trial court to analyze or apply the law correctly constitutes an abuse of discretion. *Id.*

 There is no other adequate remedy at law when a trial court improperly denies a motion to compel arbitration under the Federal Arbitration Act. *In re Halliburton Co.,* 80 S.W.3d 566, 573 (Tex. 2002), *cert. denied,* 537 U.S. 1112, 123 S.Ct. 901, 154 L.Ed.2d 785 (2003); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex.1992). It is undisputed that Garcia's employment relationship with Dillard's involved interstate commerce; therefore, the Federal Arbitration Act applies. *See Granite Constr. Co. v. Beaty,* 130 S.W.3d 362, 365 (Tex.App.-Beaumont 2004, orig. proceeding); *In re Anaheim Angels Baseball Club, Inc.,* 993 S.W.2d 875, 877–78 (Tex.App.-El Paso 1999, orig. proceeding [mand. denied]); *BWI Cos., Inc. v. Beck,* 910 S.W.2d 620, 622–23 (Tex.App.-Austin 1995, orig. proceeding [leave denied]).

### DISCUSSION

 Arbitration is a creature of contract. *In re Bunzl USA, Inc.,* 155 S.W.3d 202, 209 (Tex.App.-El Paso 2004, orig. proceeding [mand. denied]). Therefore, a person cannot be compelled to arbitrate a dispute unless she has agreed to do so. *Id.* Although there is a strong presumption favoring arbitration, this presumption does not arise until the person seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003); *Bunzl,* 155 S.W.3d at 209.

 In *Halliburton,* the Texas Supreme Court held that an employer may require an at-will employee to agree to arbitrate employment disputes as a condition of continued employment. *See* 80 S.W.3d at 572. To establish that an at-will employee agreed to arbitrate employment disputes, the employer must prove that the employee received unequivocal notice of the arbitration program. *Id.* at 568. An employee has unequivocal notice if she has been informed of the nature of the program and of the certainty of its imposition. *Hathaway v. Gen'l Mills, Inc.,* 711 S.W.2d 227, 229 (Tex.1986). If she continues working after receiving unequivocal notice, the employee is deemed to have agreed to arbitration as a matter of law. *Halliburton,* 80 S.W.3d at 568. Essentially, the employee has two choices: "accept the [arbitration program] or quit." *Hathaway,* 711 S.W.2d at 229; *see also Halliburton,* 80 S.W.3d at 572 (relying on *Hathaway* to conclude that it is not unconscionable to premise continued employment on acceptance of an arbitration program).

Dillard's argues that it proved that Garcia received unequivocal notice of its arbitration program. Maese testified that on August 27, 2000, she conducted a meeting at which she explained the arbitration program to employees, informed the employees that continued employment would constitute acceptance of the arbitration program, and distributed written materials regarding the program. It is undisputed that Garcia was on the clock when the meeting occurred. Both Maese and McMurtrie testified that there would be no reason for Garcia to be on the clock at that time other than to attend the meeting. This evidence supports Dillard's position. Garcia's affidavit, however, refutes this evidence.

Although Garcia acknowledged in her affidavit that she attended a meeting at which arbitration was discussed, she stated that the meeting occurred in the fall and

that the arbitration program was not the primary focus of the meeting. She was provided with a document that contained "a short explanation of the program to arbitrate claims," but the document was not explained to her. According to Garcia, no one told her that if she continued working at Dillard's she would be required to arbitrate disputes regarding termination of her employment. Garcia also denied that she received "The Dillard's Fairness in Action Program or Rules of Arbitration," which were attached to Dillard's motion to compel. Maese and McMurtrie testified that these were the only documents that would have been presented to employees regarding the arbitration program.

Dillard's argues that Garcia did not specifically deny receiving the acknowledgment form. It further argues that the "short explanation of the program to arbitrate claims" to which Garcia referred in her affidavit must be the acknowledgment form. However, the acknowledgment form and the Rules of Arbitration were two parts of the same document, and Garcia specifically denied receiving the Rules. Dillard's admitted that Garcia's personnel file did not contain a signed copy of the acknowledgment form. Combined with Maese's testimony that she did not remember anyone at the meeting refusing to sign the form, this is some evidence that Garcia did not receive the form. Moreover, Garcia stated that she did not sign the document she was presented with because she did not agree to be bound by its terms, thus indicating that the document she was presented with indicated that it required a signature to be binding. In contrast, the acknowledgment form states that employees are deemed to have agreed to the Rules of Arbitration by virtue of continuing their employment. The signature blocks were on the form merely to acknowledge that the employee had received it, not to manifest assent to arbitration.

From all this evidence, the trial court could have reasonably concluded that Dillard's failed to carry its burden of establishing that Garcia received unequivocal notice of the arbitration program. Therefore, the court did not abuse its discretion by refusing to compel arbitration.

### CONCLUSION

For the reasons stated herein, the petition for writ of mandamus is denied.