COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

JOHN F. COOK, §

                           Appellant,      §

No. 08-11-00367-CV

v.      §

Appeal from the

TOM BROWN MINISTRIES, WORD OF §
LIFE CHURCH OF EL PASO, TOM
BROWN, EL PASOANS FOR      §
TRADITIONAL FAMILY VALUES,
SALVADOR GOMEZ, BEN MENDOZA, §
ELIZABETH BRANHAM, AND
RICHARDA MOMSEN, SOLELY IN
HER OFFICIAL CAPACITY AS EL
PASO CITY CLERK,

County Court at Law Number Three

of El Paso County, Texas

(TC# 2011-DCV-02792)

                           Appellees.

# **O P I N I O N**

This is an accelerated interlocutory appeal of the trial court's order denying injunctive relief sought by Appellant, John F. Cook, who is the duly-elected Mayor of the City of El Paso.[1] In his individual capacity, Cook filed suit for injunctive and other relief against Appellees Tom Brown Ministries (TBM), Word of Life Church (WOL Church), Tom Brown (Brown), El Pasoans for Traditional Family Values (EPTFV), Salvador Gomez (Gomez), Ben Mendoza (Mendoza), Elizabeth Branham, (Branham), (collectively, "Appellees") and Richarda Momsen in her official capacity as El Paso City Clerk (the City Clerk). Cook sought to enjoin the use of recall petitions to call an election to recall Cook as Mayor of El Paso, and City Representatives Susie Byrd and

---

[1] Cook seeks relief in his individual capacity only and not in his official capacity as Mayor of El Paso.

Steve Ortega from their respective offices because the petitions were knowingly and improperly financed, gathered, circulated, and submitted in violation of the Texas Election Code (Election Code). *See* TEX. ELEC. CODE ANN. § 253.094(b) (as amended June 17, 2011) (West Supp. 2011), §§ 253.003, 253.005, 253.031, 253.095, 253.131, 273.081 (West 2010). In four issues, Cook now appeals the trial court's denial of his request for injunctive relief.

## BACKGROUND

Brown is the President, Chairman of the Board of Directors, and Pastor of a non-profit corporation, WOL Church.[2] Brown also served as the chairman of EPTFV, a specific-purpose political committee under the Election Code. As a specific-purpose committee, EPTFV was created for the specific purpose of supporting a measure described as "traditional family values" to be decided by election on November 2, 2010. Brown and EPTFV organized and led an effort to secure passage of Ordinance Number 017456, the "Traditional Family Values Ordinance," which provided in part, "[T]he City of El Paso endorses traditional family values by making health benefits available only to city employees and their legal spouse and dependent children." Ordinance Number 017456 was approved at the November 2, 2010, election.

On January 13, 2011, EPTFV filed a campaign finance report, including purpose and totals covering the period of October 22, 2010 through December 31, 2010. As had previously been described in such reports filed on September 29, 2010, and October 25, 2010, EPTFV's stated purpose in its filing was to support a measure described as "traditional family values" with an election date of November 2, 2010.

Thereafter, on June 14, 2011, the El Paso City Council amended Ordinance Number

---

[2] In a civil case, we accept as true the facts stated in a brief unless another party contradicts them. TEX. R. APP. P. 38.1(g).

017456, effectively restoring benefits to those persons who would have lost their benefits if the ordinance had not been amended. Cook, as Mayor, cast the tie-breaking vote.

Brown thereafter informed City Council that WOL Church, a corporation, could lawfully circulate recall petitions and would do so. WOL Church's social networking page on Facebook identifies its website as "www.tbm.org," which is also the website for TBM.[3] In a June 2011 statement on www.tbm.com, Brown stated that he and EPTFV, the specific-purpose committee, had decided to join in the recall efforts and specifically stated:

> We need you to help as well. Will you be willing to sign the petition and go the extra mile and circulate it? If so, please click here to volunteer and make your commitment.

On July 14, 2011, EPTFV filed Texas Ethics Commission Form SPAC wherein the committee changed its address and listed its campaign treasurer as "Ronald F. Webster or Gilbert T. Gallegos." The form included an address for Ronald Webster but was signed by Gilbert T. Gallegos. The report did not identify a purpose such as supporting, opposing, or assisting a candidate, officeholder, or measure, or an election date, and did not include reports regarding contributions or expenditures.

On July 18, 2011, Salvador Gomez, Ben Mendoza, and Elizabeth Branham filed notices of intent to file recall petitions against Mayor Cook, and City Representatives Susie Byrd and Steve Ortega, respectively. On or about July 18, 2011, Brown issued a social media statement encouraging the public to "[c]all the church to sign the petition." Brown did not resign from his position as Chairman of EPTFV until August 23, 2011.

*Temporary Restraining Order*

---

[3] On June 30, 2011, the website included a disclaimer, which stated: "This internet site is owned by Tom Brown and not the church. Tom Brown in his official capacity as pastor of Word of Life Church neither encourages or discourages the recall of the Mayor and Representatives."

On September 12, 2011, Cook filed suit seeking a temporary restraining order, injunctive relief, declaratory judgment, and other relief. Stating that efforts to initiate a recall election are not exempt from Texas campaign finance laws, including those that govern the participation of for-profit and not-for-profit corporations in such activity, Cook asserted that that TBM, EPTFV, and the individual Appellees were "liable for their actions as agents, officers, or directors of corporations that violated the Election Code in the circulation and submission of recall petitions in this matter." TEX. ELEC. CODE ANN. §§ 253.091 (West 2010), 253.094 (West Supp. 2011). Noting the ten-day timeframe within which the City Clerk is required to examine and certify the recall petitions, Cook timely sought relief as provided under Section 273.081 of the Election Code and other relevant provisions prior to the submission of the petitions for certification. TEX. R. CIV. P. 680; TEX. ELEC. CODE ANN. § 273.081 (West 2010); TEX. CIV. PRAC. & REM. CODE ANN. § 65.001 (West 2008). The trial court issued a temporary restraining order enjoining any further circulation of petitions and scheduled a temporary-injunction hearing for September 26, 2011.

On September 13, 2011, the following day, Tom Brown, who was *not* a named defendant in Cook's motion for a temporary restraining order and application for temporary injunction, filed a motion along with "all of the other named defendants," seeking to dissolve the temporary restraining order. On September 14, 2011, in response to the motion to dissolve, the trial court convened the parties, heard arguments from counsel but did not receive any evidence in support of the motion to dissolve the temporary restraining order, entered an order dissolving a portion of the temporary restraining order prohibiting the circulation of petitions and then granted affirmative relief rather than maintaining the status quo.

During that proceeding, Cook: (1) challenged Brown's standing to seek dissolution of the restraining order as he was not a named defendant and no other defendants had filed answers; (2) stated that the proceedings were not contesting an election; noted that he had requested mediation or the appointment of a master of Chancery to review evidence regarding the procurement of the petitions; (3) noted that the Texas Legislature has singled-out recall elections for special treatment by enacting Section 253.094(b)'s corporate-contribution prohibition and Section 273.081's designated relief permitting courts to enjoin illegal acts under the Election Code; (4) contended that allowing petitions that were circulated and submitted in violation of Election Code restrictions on corporate involvement in the process to call an election to recall an officeholder would expressly disregard the Legislature's intent in enacting Section 253.094(b) of the Election Code; and (5) argued that the trial court could not craft an exception to the Legislature's creation of a statutory exception permitting injunctive relief for Election Code violations. The trial court noted that Cook may be "absolutely right" that fraud and illegality may have taken place and asked if the trial court had the power to stop an election to thwart the rule of the public.

Cook argued that it was proper for the trial court, under these statutory provisions, to enjoin the illegal acts prohibited by Section 253.094(b) because he was not seeking to enjoin an election or to contest election results and the trial court had no discretion but to review the issues under the statutes as written.

The trial court announced:

> I don't want to deny the Mayor that right. But at the same time I don't want to deny the people of El Paso the right to recall their elected official. . . . If it is illegal, if you find illegality, fraud, irregularity, cannot a District Judge under 233 declare this a void election ab initio, to simply say this is a void election, folks, from the very beginning . . . [a]nd that's it. And then you go – and then you [go] through a process of having another election . . . at the cost of you, the citizens of El Paso

5

county.

Cook reiterated that allowing an illegal election to proceed and then declaring it invalid *ab initio* could be repeated *ad infinitum* without giving meaning to the Legislature's instruction. The court replied, "I want to give meaning to that section [253.094(b)] . . . but more important is the will of the people."

The trial court also noted that its office had received calls from signatories to the petition asking if their signatures were valid or invalid and Cook's counsel noted that "[w]e have received calls . . . about a lot of other issues or irregularities . . . not in evidence . . [or] . . . before the Court today." The trial court again stated that it did "not want to thwart the will of the people," would allow recall petitions to be presented to the City Clerk, and would:

> [F]orce [Cook] at [the] end of this process . . . to file [a] 233 petition and say, Judge, we've got a void election *ab initio*. It's void at the inception. Period.
> And then you go to, you know, Court, District Judge, to – if that District Judge says yes we've got a -- a void election, then you start the process and it's going to cost the City of El Paso a lot of money.
> But that's what the people want. . . . That's – that's democracy. . . . [T]he Court doesn't want to get in the way of an election.

Thereafter, on September 15, 2011, the trial court dissolved several of the provisions within the temporary restraining order, including restrictions related to the circulation of recall petitions by TBM, WOL Church, EPTFV, Gomez, Mendoza, and Branham and the submission of the petitions to the City Clerk until further order of the Court. The dissolution order further granted affirmative relief by ordering the City Clerk to accept all original recall petitions.

*Writ of Mandamus and Certification of Petitions*

That same day, Cook filed in this Court a petition for writ of mandamus and a motion for emergency temporary relief. On September 22, 2011, one week later, the City Clerk certified that

6

the requisite number of qualified electors had signed petitions in support of the recall. This Court dismissed Cook's mandamus petition on October 3, 2011, because the temporary restraining order had expired by its own terms and all issues related thereto had become moot. *In re John F. Cook*, No. 08-11-00274-CV, 2011 WL 4543490 (Tex.App. -- El Paso October 3, 2011, orig. proceeding).

*Temporary Injunction Hearing*

A temporary-injunction hearing was conducted over five days during October and November 2011. In the early part of the hearing, the District Attorney was called as a witness and testified that his office was looking into possible criminal violations of the Election Code. As a result, multiple witnesses invoked the Fifth Amendment during their testimony.

EPTFV Treasurer, Ronald Webster, testified that EPTFV was formed in 2010, and he began serving as the treasurer of EPTFV in July 2011, and had been involved with EPTFV since 2009, before its actual inception. Mr. Webster acknowledged that EPTFV had filed with the City Clerk on July 14, 2011, a specific-purpose committee finance report form, which included information regarding EPTFV's change of campaign treasurer and address but did not identify the committee's purpose such as supporting, opposing, or assisting a candidate, officeholder, or measure, an election date, or reports regarding contributions, expenditures, or loans. Mr. Webster testified that the form did not create a new political committee and, as custodian of records, he identified prior EPTFV specific-purpose committee filings, which stated that the committee's purpose was to support a traditional-family-values measure to be decided by election on November 2, 2010. Mr. Webster acknowledged that the Texas Ethics Commission provides online materials and guidelines regarding the information and forms to be filed, and stated that he had both viewed the materials and had made an effort to study them. EPTFV had filed no forms

7

since July 2011, and had filed no forms in relation to the recall efforts. Mr. Webster confirmed that EPTFV was involved with the effort to recall Cook, Byrd, and Ortega, and that EPTFV had spent more than $3,000 in support thereof. Mr. Webster stated that he was aware that to support or oppose a specific measure and to spend more than $500, a treasurer must be designated along with a specific-purpose committee.[4] He acknowledged that no appointment or designation of a treasurer for any specific-purpose committee other than EPTFV for the previous November 2, 2010, traditional-family-values ordinance election had occurred. Webster did not bring records of contributions and expenditures because of his concern that he would incriminate himself. There is no evidence in the record demonstrating that EPTFV had filed any forms with the Texas Election Commission to "repurpose" the committee or that a new specific-purpose committee was formed for the purpose of supporting a measure to recall officeholders Cook, Byrd, or Ortega.

Both in amended pleadings filed November 23, 2011, as well as during the temporary-injunction hearings, Cook contended that in addition to the campaign finance violations relating to the corporation's contributions in connection with the circulation and submission of petitions to call a recall election, Appellees had expended approximately $4,000 without creating a new specific-purpose committee or designating a committee treasurer, in violation of Sections 253.003, 253.005, and 253.031 of the Election Code.[5] TEX. ELEC. CODE ANN. §§

---

[4] Each political committee must appoint a campaign treasurer and a political committee may not knowingly accept political contributions totaling more than $500 or make or authorize political expenditures totaling more than $500 at a time when a campaign treasurer appointment for the committee is not in effect. TEX. ELEC. CODE ANN. §§ 252.001, 253.031(b) (West 2010). A violation of these provisions constitutes an offense. *Id.* A person who knowingly makes a political contribution in violation of the Election Code or who knowingly accepts a political contribution the person knows to have been made in violation of Chapter 253 of the Code commits an offense. TEX. ELEC. CODE ANN. §§ 252.001, 253.003 (West 2010). A person who knowingly makes or authorizes a political expenditure wholly or partly from a political contribution the person knows to have been made in violation of Chapter 253, other than Section 253.101, commits an offense. TEX. ELEC. CODE ANN. § 253.005(West 2010).

[5] In his third amended petition, Cook cites to a non-existent statute, Section 253.051, but from our review of the record

8

251.001(2),(3),(5), 253.003, 253.005, 253.031, 253.091, 253.095 (West 2010), 253.094(b) (West Supp. 2011).

On November 28, 2011, without hearing additional argument, the trial court denied Cook's request for injunctive relief. We judicially notice that on January 30, 2012, the El Paso City Council called the recall election and scheduled it for April 14, 2012. A person may appeal from an interlocutory order of a district court that grants or refuses a temporary injunction. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (West 2008).

## DISCUSSION

*Temporary Injunction*

The Election Code entitles a person who is being harmed or is in danger of being harmed by a violation or threatened violation of its provisions to obtain the remedy of injunctive relief to prevent the violation from continuing or occurring. TEX. ELEC. CODE ANN. § 273.081 (West 2010). When, as here, an applicant relies upon a statutory source for injunctive relief, the statute's express language supersedes the common law injunctive relief elements such as imminent harm or irreparable injury and lack of an adequate remedy at law.[6] *Butnaru v. Ford*

---

it is apparent from the content of Cook's pleadings, his arguments before the trial court, as well as in his briefs and oral argument before this Court, that Cook intended to cite and rely upon Section 253.031 of the Election Code, which restricts campaign contributions and expenditures at a time when a campaign treasurer appointment for a political committee is not in effect. TEX. ELEC. CODE ANN. § 253.031 (West 2010). Appellees have contended in this appeal that Cook's allegations that Sections 252.001, 253.003, 253.005, and 253.031(b) never appeared in Cook's pleadings, were never presented to the trial court, and formed no part of the proceedings below. While it is true that Cook's live pleading below does not specifically cite to Section 252.001 of the Election Code, which requires the appointment of a campaign treasurer, Cook alleges that the proponent defendants spent money without creating a new political committee or designating a treasurer therefor. Cook cites the other provisions. No named defendant filed special exceptions to Cook's pleadings nor otherwise complained to the trial court about this issue before the trial court ruled. We liberally construe in favor of the pleader those pleadings not challenged by special exceptions. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). We look to the pleader's intent and supply every fact "that can reasonably be inferred from what is specifically stated." *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982).

[6] Under common law, a temporary injunction does not issue as a matter of right but is an extraordinary remedy.

9

*Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002) (recognizing that requirements for establishing right to common-law injunctive relief differ from those where injunctive relief is authorized by statute); *Marauder Corp. v. Beall*, 301 S.W.3d 817, 820 (Tex.App.--Dallas 2009, no pet.); *Avila v. State*, 252 S.W.3d 632, 648 (Tex.App.--Tyler 2008, no pet.); *David Jason West and Pydia, Inc. v. State*, 212 S.W.3d 513, 519 (Tex.App.--Austin 2006, no pet.).

*Standard of Review*

The purpose of a temporary injunction "is to preserve the status quo of the litigation's subject matter pending a trial on the merits." *Butnaru*, 84 S.W.3d at 204; *Pharaoh Oil & Gas, Inc. v. Ranchero Esperanza, Ltd.*, 343 S.W.3d 875, 880 (Tex.App.--El Paso 2011, no pet.). The status quo is the "last, actual, peaceable, non-contested status that preceded the pending controversy." *See State v. Sw. Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex. 1975). The continuation of illegal conduct, however, cannot be justified as preservation of the status quo. *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004); *Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768, 773 (Tex.Civ.App.--Houston [1st Dist.] 1970, no writ) ("In an injunction case wherein the very acts sought to be enjoined are acts which prima facie constitute the violation of expressed law, the status quo to be preserved could never be a condition of affairs where the respondent would be permitted to continue the acts constituting that violation.").

A decision to grant or deny a temporary injunction rests within the trial court's sound discretion. *Butnaru*, 84 S.W.3d at 204; *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 880. In reviewing the trial court's order granting or denying injunctive relief, we do not review the merits

---

*Butnaru*, 84 S.W.3d at 204. An applicant seeking a temporary injunction under common law must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id.* If the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard, an injury is irreparable. *Id.*

10

of the underlying case. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978). We reverse the trial court's order granting or denying injunctive relief only if an abuse of discretion is shown. *Butnaru*, 84 S.W.3d at 204.

We do not substitute our judgment for that of the trial court unless the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion. *Butnaru*, 84 S.W.3d at 204; *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 918 (Tex. 1985); *Davis*, 571 S.W.2d at 861-62; *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 881. We view the evidence in the light most favorable to the trial court's order, indulging every reasonable inference in its favor, and determine whether the order is so arbitrary as to exceed the bounds of reasonable discretion. *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 881. An abuse of discretion does not exist if the trial court bases its decisions on conflicting evidence. *Bailey v. Rodriguez*, 351 S.W.3d 424, 426 (Tex.App.--El Paso 2011, no pet.), *citing Davis*, 571 S.W.2d at 862.

However, our review is much less deferential regarding the resolution of legal issues. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *In re Phelps Dodge Magnet Wire Co.*, 225 S.W.3d 599, 603 (Tex.App.--El Paso 2005, orig. proceeding); *In re Dillard Department Stores, Inc.*, 153 S.W.3d 145, 149 (Tex.App.--El Paso 2004, orig. proceeding) (mandamus cases addressing trial court's alleged abuse of discretion with respect to resolution of legal issues). A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. Where the facts definitively indicate that a party is in violation of the law, a trial court no longer possesses discretion but must enjoin the violation. *San Miguel v. City of Windcrest*, 40 S.W.3d 104, 107 (Tex.App.--San Antonio 2000, no pet.); *Priest v. Texas Animal Health Com'n*, 780 S.W.2d 874, 876 (Tex.App.--Dallas 1989, no writ); *City of Houston v.*

11

*Memorial Bend Util. Co.*, 331 S.W.2d 418, 422 (Tex.Civ.App.--Houston 1960, writ ref'd n.r.e.).

Consequently, a court abuses its discretion if there is a clear failure to analyze or apply the law

correctly. *Walker*, 827 S.W.2d at 840; *In re Dillard*, 153 S.W.3d at 148.

## ISSUES

**ISSUES ONE AND TWO**

In Issues One and Two respectively, Cook asks:

(1) Does a Texas trial court have the discretion to refuse to enforce the Texas Election Code, and enjoin corporate entities and labor organizations from illegally providing resources and organizing recall election campaigns, despite the prohibitions of . . . Section 253.094 of the Texas Election Code; and

(2) Does a Texas trial court have the discretion to refuse to enforce Texas election laws prohibiting persons from making political expenditures in excess of $500 without forming a political committee, appointing a campaign treasurer, and filing the appointment with the appropriate authority, as required by Sections 252.001, 253.002, and 253.031 of the Texas Election Code, and refuse to enjoin such violations?

Advisory opinions decide abstract questions of law without binding the parties. *Brown v. Todd*,

53 S.W.3d 297, 302 (Tex. 2001). Under the separation-of-powers doctrine, courts are prohibited

from issuing advisory opinions, which are a function of the executive branch of government.

*Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

Issues One and Two ask that we rule on abstract questions of law without application to the

facts of this case, which would bind the parties. Because we are unable to render advisory

opinions on abstract questions of law without binding the parties, Issues One and Two are

overruled. *Southwestern Elec. Power Co. v. Grant*, 73 S.W.3d 211, 223 (Tex. 2002); *Brown*, 53

S.W.3d at 302. However, we are not barred from recognizing and applying relevant law,

including the questions of law raised within Issues One and Two, to resolve the remaining issues

12

properly before us.

**ISSUE THREE**

In Issue Three, Cook asks us to determine whether the trial court abused its discretion by refusing to grant his application for a temporary injunction. If the evidence shows that an Election Code violation has occurred or is occurring and that Cook is being harmed or is in danger of being harmed by the violation or threat of violation of the Election Code provisions, Cook is entitled to appropriate injunctive relief to prevent the violation from continuing or occurring. TEX. ELEC. CODE ANN. § 273.081 (West 2010). No evidence of imminent harm, irreparable injury, or the absence of an adequate remedy at law is necessary to support Cook's entitlement to injunctive relief. TEX. ELEC. CODE ANN. § 273.081 (West 2010); *Marauder Corp.*, 301 S.W.3d at 820; *Avila*, 252 S.W.3d at 648; *West and Pydia, Inc.,* 212 S.W.3d at 519.

*Texas Election Code § 253.094(b)*

Cook pleaded and argued two bases for injunctive relief under Section 273.081. Cook first alleged violations of Election Code Section 253.094(b). TEX. ELEC. CODE ANN. § 253.094(b) (Contributions Prohibited) (West Supp. 2011).

A corporation is restricted from making a campaign contribution from its own property in connection with a measure-only election unless the contribution is made to a measure-only committee. TEX. ELEC. CODE ANN. § 253.096 (West 2010). However, the Election Code also specifies that a corporation is prohibited from making political contributions in connection with a recall election, including the circulation and submission of petitions to call an election. TEX. ELEC. CODE ANN. § 253.094(b) (West Supp. 2011).

A political contribution includes a campaign contribution, which is defined as a

13

contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office or on a measure. TEX. ELEC. CODE ANN. § 251.001(3), (5) (West 2010). A "contribution" is defined to include a direct or indirect transfer of money, goods, services, or any other thing of value. TEX. ELEC. CODE ANN. § 251.001(2) (West 2010). Whether a contribution is made before, during, or after an election does not affect its status as a campaign contribution. TEX. ELEC. CODE ANN. § 251.001(3) (West 2010). In its *Campaign Finance Guide for Political Committees*, the Texas Ethics Commission states that "A contribution of goods or services is an 'in-kind' contribution" and lists as examples of such contributions donations of money to a political committee, and the donation of materials and labor for printing campaign signs. A promise to give a political committee money after an election to pay debts incurred in connection with an election is a contribution in the form of a pledge.[7]

A political committee is defined as a group of persons that has as a principal purpose accepting political contributions or making political expenditures and each political committee is required to appoint a campaign treasurer. TEX. ELEC. CODE ANN. §§ 251.001(12), 252.001 (West 2010). A specific-purpose committee is a political committee that does not have among its principal purposes those of a general-purpose committee but does have among its principal purposes: (A) supporting or opposing one or more candidates, all of whom are identified and are seeking offices that are known, or measures, all of which are identified; (B) assisting one or more officeholders, all of whom are identified; or (C) supporting or opposing only one candidate who is unidentified or who is seeking an office that is unknown. TEX. ELEC. CODE ANN. § 251.001(13) (West 2010). The Election Code defines a "measure" as a question or proposal

---

[7] Texas Ethics Commission, *Campaign Finance Guide for Political Committees*, at 12 (Feb. 16, 2012) *available* at http://www.ethics.state.tx.us./guides/PAC_guide.pdf.

14

submitted in an election for an expression of the voters' will and includes the circulation and submission of a petition to determine whether a question or proposal is required to be submitted in an election for an expression of the voters' will. TEX. ELEC. CODE ANN. § 251.001(19) (West 2010).

To recall any elected officer of the City of El Paso, a notice of intent to circulate a recall petition must be filed with the City Clerk and circulated petitions must be submitted to the City Clerk within sixty days of such notice. El Paso, Tex., Ordinance 8066 (June 5, 1984). After examination by the City Clerk, if the petition is found to be sufficient, the City Clerk is required to submit the petition to the City Council and, if the officer does not resign, the City Council is required to order that a recall election be held at the next election date permitted by law. El Paso, Tex., Ordinance 8066 (June 5, 1984). Therefore, an election to recall an elected officer of the City of El Paso, including the circulation and submission of a recall petition, constitutes a "measure" under the Election Code. TEX. ELEC. CODE ANN. § 251.001(19) (West 2010).

Cook presented evidence that WOL Church is a corporation and that the corporation's website address is "www.tbm.org." Cook showed both that Brown is the President and Chairman of the Board for the WOL Church, a corporation, and that Brown utilized the corporate website to ask for volunteers to circulate recall petitions in June 2011. On July 1, 2011, the website provided an electronic entry form whereby anyone who desired to circulate a recall petition could register through the website to do so but now included two disclaimers stating that the website was owned by Brown and not WOL Church and a statement that the electronic form was not a petition. On July 21, 2011, the website added a list of "[l]ocations of recall petitions," which included WOL Church and other corporations, a business, and an individual as well as the respective corporate

15

addresses and phone numbers. Evidence was presented that on August 8, 2011, the website posted a link for the "[r]ecall of the Mayor and City Representatives," and that the disclaimer that the website was owned by Tom Brown was removed.

Brown invoked his Fifth Amendment right to remain silent when he was asked, among other questions, if: (1) the website was identified by the name of WOL Church; (2) WOL Church was responsible for the website and had worked with TBM to publish the information posted on July 21, 2011; (3) WOL Church and TBM are one and the same; (4) through its website and use of its premises, WOL Church circulated petitions to recall Cook, Byrd, and Ortega; (5) WOL Church advertised through the website that the public could go to WOL Church to sign and circulate recall petitions; (6) WOL Church provided its facilities for the signing and circulation of the recall petitions; (7) WOL Church participated in "paying for" the recall petitions; (8) in addition to himself, other officers or directors of WOL Church were circulators of recall petitions; and (9) WOL Church charges for the use of its facilities. In civil proceedings, a trial court may draw an adverse inference against a party who invokes the right to remain silent under the Fifth Amendment. TEX. R. EVID. 513(c); *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed2d 810 (1976); *Wil-Roye Inv. Co. II v. Washington Mut. Bank, FA*, 142 S.W.3d 393, 405 (Tex.App.--El Paso 2004, no pet.); *Tex. Cap. Securities, Inc. v. Sandefer*, 58 S.W.3d 760, 779 (Tex.App.--Houston [1st Dist.] 2001, pet. denied).

The Election Code does not define goods, services, or "thing of value." It is clear that WOL Church, as a corporation, through the use of its website, promoted the circulation of recall petitions, created a portal whereby volunteers could register through WOL Church to circulate petitions, provided the facility and personnel to assist in the signing and circulation of the recall

16

petitions, and notified the public that recall petitions were available for signing at WOL Church. The evidence establishes that WOL Church made campaign contributions from its own property in connection with a measure-only recall election without properly making the contributions to a measure-only committee, TEX. ELEC. CODE ANN. § 253.096 (West 2010), and that WOL Church, a corporation, made a political contribution in connection with a recall election, including the circulation and submission of petitions to call an election, and failed to make such contribution to a political committee in violation of Sections 253.096 and 253.094(b) of the Election Code. TEX. ELEC. CODE ANN. §§ 253.096 (West 2010), 253.094(b) (West Supp. 2011).

## Citizens United

Appellees argue, "Even assuming [Cook] is factually correct, the circulation and submission of recall petitions by [corporations] represents core First Amendment activity" and falls within the protection of the Supreme Court's ruling in *Citizens United*. *Citizens United v. Fed. Election Comm'n*, --- U.S. ---, ---, 130 S.Ct. 876, 913, 917, 175 L.Ed.2d 753 (2010).

In *Citizens United v. Fed. Election Comm'n*, the United States Supreme Court held that a federal statutory restriction on "corporate independent expenditures" was unconstitutional. *Id.* The Supreme Court also recognized that "Disclaimer and disclosure requirements may burden the ability to speak, but they 'impose no ceiling on campaign-related activities,' . . . and 'do not prevent anyone from speaking[.]'" *Id.* at 914, *citing Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) *and McConnell v. Fed. Election Comm'n*, 540 U.S. 93, 201, 203-209, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003).

After *Citizens United* was decided, the Texas Legislature amended Section 253.094(b) to omit restrictions upon corporations making "direct campaign expenditures" under the Texas

Election Code.[8]   TEX. ELEC. CODE ANN. § 253.094(b) (West Supp. 2011) as amended by Acts 2011, 82nd Leg., R.S., ch. 1009, §§1, 2, 2011 Tex. Sess. Law Serv. (H.B. 2359) (West 2011).

In *Ex parte Ellis*, a post-*Citizens United* case, the Texas Court of Criminal Appeals determined that *Citizens United* had no effect upon the jurisprudence relating to corporate contributions.[9]   *In re Ellis*, 309 S.W.3d 71, 91 (Tex.Crim.App. 2010).   In considering vagueness- and overbreadth-challenges to the constitutionality of Section 253.094 of the Election Code, which we do not recite or address here, the Court noted that unless authorized by the Election Code, corporate political contributions are prohibited but recognized that the Election Code permits a corporation to "make campaign contributions from its own property in connection with an election on a measure only to a political committee for supporting or opposing measures exclusively."   *In re Ellis*, 309 S.W.3d at 87.   Rejecting the constitutional challenges to the Election Code's corporate-contribution restrictions in Section 253.094, the *Ellis* Court held that a corporation may enjoy several alternate avenues for political expression with respect to measures:

> First and most obviously, a corporation may contribute to a political committee devoted exclusively to measures.   Second, a corporation may create its own

---

[8] Under the Texas Election Code, an "expenditure" is a payment of money or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a payment.   TEX. ELEC. CODE ANN. § 251.001(6) (West 2010).   An expenditure made by any person in connection with a campaign for an elective office or on a measure is a "campaign expenditure."   TEX. ELEC. CODE ANN. § 251.001(7) (West 2010). A campaign expenditure that does not constitute a campaign contribution by the person making the expenditure is a "direct campaign expenditure."   TEX. ELEC. CODE ANN. § 251.001(8) (West 2010).   In its *Campaign Finance Guide for Political Committees*, the Texas Ethics Commission notes that a political committee must report any expenditure made from political contributions, even if the expenditure is not for a campaign or officeholder purpose, and identifies as examples of political expenditures the purchasing of stationery for fund-raising letters, the renting of a field to hold a campaign rally, paying people to put up yard signs in connection with an election, a political contribution to a candidate or officeholder by a political committee, and payments to finance a political committee's general operating expenses.   Texas Ethics Commission, *Campaign Finance Guide for Political Committees*, at 12-13 (Feb. 16, 2012) *available* at http://www.ethics.state.tx.us./guides/PAC_guide.pdf.

[9] The defendants in *Ellis* had been indicted on charges of unlawful acceptance of corporate political contributions and money laundering and, in a petition for discretionary review before the Court of Criminal Appeals, asserted as erroneous the Austin Court of Appeals' findings that Section 253.094 of the Texas Election Code was neither unconstitutionally vague nor overbroad.   *In re Ellis*, 309 S.W.3d at 75, 78 n.39.

political committee, which can then solicit contributions from the corporation's shareholders, employees, and their families, and any contributions received may then be contributed without being subject to corporate limitations. Finally, a corporation may make independent expenditures (*e.g.,* buy its own issue ads), make press releases, and otherwise have its agents directly engage in communication with respect to a measure (or a candidate, for that matter).

TEX. ELEC. CODE ANN. §§ 253.096, 253.100, 253.092 (West 2010); *In re Ellis*, 309 S.W.3d at 90-92. Regarding the concept of issue advocacy, the Court determined that regardless of whether a measure is slated for election, creation of a corporate political committee for soliciting contributions and making independent expenditures, the second and third avenues recognized in *Ellis*, afford sufficient avenues for corporate free expression. TEX. ELEC. CODE ANN. §§ 253.092, 253.096 (West 2010); *In re Ellis*, 309 S.W.3d at 91-92 (internal citations omitted).

Let us be clear. The Election Code has not and does not prohibit any and all corporate contributions in connection with recall elections. It merely prescribes the parameters under which contributions may be made. Appellees were not barred from pursuing the November 2010 ballot initiative through the special purpose committee known as EPTFV, nor were they banned from speaking. They spoke and spoke loudly. They are not banned from speaking now. They must simply follow the protocol established in the Election Code with which they are already familiar. All they needed to do was "re-purpose" EPTFV or create a new special purpose committee. "Why?", one might ask. Why are these procedures necessary? *Citizens United* tells us precisely why:

> The First Amendment protects political speech; and disclosure permits citizens and shareholders to react to the speech of corporate entities in a proper way. This transparency enables the electorate to make informed decisions and give proper weight to different speakers and messages.

*Citizens United*, 130 S.Ct. at 916.

19

While finding that Citizens United was constitutionally empowered to speak, the Court also required it to disclose the identities of the parties who spoke. In accordance with *Citizens United,* the Texas Election Code also requires disclosure. *See* TEX. ELEC. CODE ANN. § 253.094(b) West Supp. 2011). Violations of Section 253.094(b) were established in the trial court below. TEX. ELEC. CODE ANN. § 253.094(b) (West Supp. 2011).

*Texas Election Code §§ 253.003, 253.005, and 253.031*

Cook next alleged that Sections 253.003, 253.005, and 253.031 of the Election Code have been violated.[10] TEX. ELEC. CODE ANN. §§ 253.003 (Unlawfully Making or Accepting Contribution), 253.005 (Expenditure from Unlawful Contribution), 253.031(b) (Contribution and Expenditure without Campaign Treasurer Prohibited) (West 2010).

A corporation is restricted from making a campaign contribution from its own property in connection with a measure-only election unless the contribution is made to a measure-only committee. TEX. ELEC. CODE ANN. § 253.096 (West 2010). A "measure" means a question or proposal submitted in an election for an expression of the voters' will and includes the circulation and submission of a petition to determine whether a question or proposal is required to be submitted in an election for an expression of the voters' will. TEX. ELEC. CODE ANN. § 251.001(19) (West 2010).

A person may not knowingly make a political contribution nor knowingly accept a political contribution the person knows to have been made in violation of Chapter 253 of the Election Code.

---

[10] Appellees complain that Cook's assertions regarding the alleged violations of Sections 252.001, 253.003, 253.005, and 253.031 were not properly before the trial court and are untimely. However, our review of the record reveals that Cook both presented evidence of these violations and made arguments in support of his request for relief regarding these specific violations during the temporary-injunction hearing, and pleaded the violations in his third amended petition filed on November 23, 2011. The trial court did not enter its order denying the temporary injunction until November 28, 2011. Moreover, our review of the record shows that Appellants never objected to Cook's arguments when made nor to his pleadings prior to the trial court's entry of an order denying relief.

20

TEX. ELEC. CODE ANN. § 253.003 (West 2010).   A person is also prohibited from knowingly making or authorizing a political expenditure wholly or partly from a political contribution the person knows to have been made in violation of Chapter 253.   TEX. ELEC. CODE ANN. § 253.005 (West 2010).   A political committee is barred from knowingly accepting political contributions totaling more than $500 and may not knowingly make or authorize political expenditures totaling more than $500 at a time when a campaign treasurer appointment for the committee is not in effect.   TEX. ELEC. CODE ANN. § 253.031(b) (West 2010).   An officer, director, or other agent of a corporation who commits an offense under Chapter 253, Subchapter D of the Election Code, which regulates corporate contributions and expenditures, is punishable for the grade of offense applicable to the corporation. TEX. ELEC. CODE ANN. § 253.094(c) (West Supp. 2011).

Mr. Webster, the treasurer of EPTFV, testified during the temporary-injunction hearing that he had viewed and had attempted to study the Texas Ethics Commission materials regarding specific-purpose committee requirements, and was aware that to support or oppose a specific measure and in order to spend more than $500, a treasurer must be designated for a specific-purpose committee.   Webster testified that no new specific-purpose committee was formed with respect to the efforts to recall Cook, Byrd, and Ortega.   He acknowledged that no appointment or designation of a treasurer of any specific-purpose committee identified with anything other than EPTFV's previous November 2, 2010, traditional-family-values ordinance election had occurred.   According to Webster, EPTFV had proceeded, after the conclusion of its identified purpose, to expend more than $3,000 to support the recall efforts of Cook, Byrd, and Ortega.   When asked why he did not bring records of EPTFV's contributions and expenditures to

21

the hearing, Webster answered that he had not brought the records because he believed he could possibly face criminal liability and invoked his right to remain silent from which it is permissible to draw an adverse inference. TEX. R. EVID. 513(c); *Baxter*, 425 U.S. at 318, 96 S.Ct. at 1558; *Wil-Roye Inv. Co. II*, 142 S.W.3d at 405; *Tex. Cap. Securities, Inc.*, 58 S.W.3d at 779. It is evident that violations of Section 253.031(b) of the Election Code have occurred.

*Harm or Danger of Harm*

Having determined that provisions of the Election Code have been violated, we next consider whether Cook is being harmed or is in danger of being harmed by the violations. TEX. ELEC. CODE ANN. § 273.081 (West 2010). We conclude that he is.

Uncontroverted is the fact that Cook was duly elected by eligible voters to the office of Mayor in a properly-conducted election. Cook's current term of office expires in May 2013 and, due to term limits, he is ineligible for reelection. Appellees essentially contend that the City is required to call an election to recall a duly-elected officeholder based upon the City Clerk's certification of illegally financed, circulated, and submitted petitions and conduct a recall election at taxpayer expense because Cook, if recalled, may then challenge the legality of the petitions and may contest the illegally-called election. We do not agree. We conclude that when, as here, an entity desiring to have its voice heard in a recall effort, fails to adhere to statutes set forth in the State Election Code by illegally procuring petitions in violation of those statutes, the illegally procured petitions are invalid from their inception inasmuch as they constitute the fruits of illegal activity. The violations are particularly egregious when the evidence establishes that the entity was aware of and had adhered to those same statutes in a prior effort to pass a city ordinance.

A corporation that has made political contributions in connection with a recall election in

22

violation of the Election Code should not be permitted to benefit from its violations simply because the certification process has occurred. While it is true that criminal penalties may be imposed upon the corporation, such penalties do not address the fact that the corporation's illegal conduct under the Election Code acts to disenfranchise those voters who elected Cook to his office. Cook timely sought judicial intervention in an effort to enjoin the City from using the fruits of WOL Church's improper corporate contributions, including the circulation of the petitions, for the purpose of calling the recall election. But for the trial court's acquiescence to the "will of the people," the improper dissolution of relevant portions of the temporary restraining order and the denial of injunctive relief, the certification would not have occurred and the election would not have been called. Because the matter was one that could have been, and should have been, judicially resolved in time for the proponents to correct deficiencies without delaying the election, injunctive relief was the proper remedy to prevent violations from continuing or occurring and not an election contest. *Blum*, 997 S.W.2d at 263.

Moreover, we note that there is no evidence in the record that certification of petitions acts to do more than certify that eligible individuals, in requisite number, signed the petitions within the proper timeframe for doing so. A clerk's certification of the petitions does not address whether, as here, a corporation has made improper contributions in connection with a recall election, including the circulation and submission of petitions, in violation of the Election Code.

More than $3,000 has admittedly been expended by EPTFV in the recall effort. EPTFV's purpose was identified as supporting a measure involving "traditional family values," and in a November 2010 election, its purpose culminated. As no proper specific-purpose committee exists to support a measure to recall Cook and no designated treasurer therefor exists, we find that

23

Cook is harmed by these Election Code violations. TEX. ELEC. CODE ANN. §§ 252.001, 253.003, 253.031(b) (West 2010).

Thus, we find that the violations of the Election Code in this case continue to occur, and as such we are authorized by Section 273.081 to enjoin the continued violation by appropriate injunctive relief. TEX. ELEC. CODE ANN. § 273.081 (West 2010).

*Abuse of Discretion*

Despite having viewed the evidence in the light most favorable to the trial court's order and indulging every reasonable inference in its favor, we find the trial court's order denying injunctive relief is so arbitrary as to exceed the bounds of reasonable discretion. *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 881. Because we find that the error relates back to the time of the improper dissolution of the temporary restraining order, prior to the presentment and certification of the petitions, we find that all of the recall petitions submitted to the City Clerk are illegal and invalid.

The trial court was required to apply the law to the facts. *Walker*, 827 S.W.2d at 840; *In re Dillard*, 153 S.W. 3d at 148. We find the trial court failed to do so here. A number of the trial court's comments throughout the proceedings below, such as "I don't want to thwart . . . the will of the people," and it "[d]oesn't matter what I do or say, one side or the other is going to appeal," indicate an abdication of the judicial responsibility it had to enforce the laws. A trial court has no discretion in determining what the law is or in applying the law to the facts. *Walker*, 827 S.W.2d at 840. As the trial court repeatedly stated, its reason for dissolving the temporary restraining order was that it did not wish to thwart the will of the people to recall its elected officials. Because the facts definitively indicate that a party is in violation of the law, the trial court no longer possessed discretion and was required to enjoin the violation. *San Miguel*, 40 S.W.3d at

24

107.   Here, the trial court's actions hindered the judicial process and deprived Cook of the relief to which he was entitled.   It is essential to the preservation of the independence of the judiciary and public confidence in the judicial process that a judge be faithful to the law and not be swayed by public clamor or fear of criticism.   TEXAS CODE OF JUDICIAL CONDUCT, CANON 3B(2). It is significant, we think, that the trial court lost sight of the fact that a proper application of the law to the facts in this case does not act to bar qualified voters from properly exercising their right to seek a recall of elected officeholders, provided that such right is exercised in accordance with the provisions of the Election Code.

*Relief*

Because Cook is being harmed by the City's use of petitions illegally-procured because of violations of the Election Code provisions, Cook is entitled to the appropriate injunctive relief to prevent the violations from continuing or occurring.   TEX. ELEC. CODE ANN. § 273.081 (West 2010).   We disagree with the City Clerk's assertion that the issues are moot because the petitions have been certified.   The illegal acts which mar the validity of the petitions cannot be made clean through the certification process.   Furthermore, the continuation of the illegal conduct cannot be justified as preservation of the status quo.   *In re Newton*, 146 S.W.3d at 651; *Houston Compressed Steel Corp*, 456 S.W.2d at 773.

Appellees additionally argue that a court is barred from stopping or delaying an election. We are guided by the Texas Supreme Court's analysis in *Blum v. Lanier*, 997 S.W.2d 259, 263 (Tex. 1999).   In that case, Blum was not seeking to enjoin an election but to prevent the City from using a vague and misleading description of a proposed charter amendment. *Blum,* 997 S.W.2d at 263.   While agreeing that Blum had no right to delay an election, which would interfere with the

25

elective process in a manner contrary to the separation-of-powers doctrine, the Texas Supreme Court recognized that while an injunction that delays the election would be improper, "an injunction that facilitates the elective process may be appropriate." *Blum,* 997 S.W.2d at 263. Therefore, "if the matter is one that can be judicially resolved in time to correct deficiencies in the ballot without delaying the election, then injunctive relief may provide a remedy that cannot be adequately obtained through an election contest." *Id.* at 263-64.

While we recognize that an injunction to delay an election is not permitted, this is premised on the assumption that the requisite preliminary acts were performed in accordance with the provisions of the Election Code. *See Blum,* 997 S.W.2d at 263. That assumption has been disproven here.

Issue Three is sustained. Because we have sustained Issue Three, we need not address Issue Four. Therefore, because the trial court's action was so arbitrary that it exceeded the bounds of reasonable discretion, we reverse the trial court's order denying injunctive relief and render the judgment the trial court should have rendered. *Butnaru*, 84 S.W.3d at 204; *Johnson*, 700 S.W.2d at 918; *Davis*, 571 S.W.2d at 861-62; *Pharaoh Oil & Gas, Inc.*, 343 S.W.3d at 881; TEX. R. APP. P. 43.2(c). The City Clerk is ordered to decertify and return the recall petitions. Having instructed the City Clerk to decertify the petitions, no election thereon may be called or held. TEX. ELEC. CODE ANN. § 273.081 (West 2010). Appellees' Motion to Dismiss Injunctive Claims as Moot filed in this Court on February 7, 2012, is denied.

ANN CRAWFORD McCLURE, Chief Justice

GUADALUPE RIVERA, Justice

CHRISTOPHER ANTCLIFF, Justice

26

February 17, 2012

Before McClure, C.J., Rivera, J., and Antcliff, J.