IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 23, 2008

Charles R. Fulbruge III
Clerk

No. 06-41619

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA

Plaintiff - Appellant

v.

PUGET PLASTICS CORP; PUGET PLASTICS CORPORATION SA DE CV

Defendants - Appellees

MICROTHERM INC

Intervenor Plaintiff - Appellee

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

A jury found that Defendants-Appellees Puget Plastics Corp. and Puget Plastics Corp. SA DE CV (collectively, "Puget") knowingly violated the Texas Deceptive Trade Practices Act ("DTPA") in their business dealings with Intervenor Plaintiff-Appellee Microtherm, Inc. ("Microtherm"). In this subsequent coverage action, Puget and Microtherm (collectively, "Appellees") seek indemnification from National Union Fire Insurance Co. ("National

Union"), Puget's insurer.  After both Appellees and National Union moved for summary judgment, the district court granted in part summary judgment for Appellees and denied summary judgment for National Union.  National Union appealed.[1]  For the reasons below, we AFFIRM.

I.

Microtherm manufactures the Seisco–a compact, tankless water heater that instantaneously heats water upon demand.[2]  One of its main components is a water chamber made from plastic manufactured by DuPont.  In 2000, Puget made 5,000 water chambers for Microtherm.  Because Puget knowingly flouted DuPont's recommended temperature guidelines, approximately 800 of these water chambers later ruptured.  Appellees allege that, in many cases, the ruptures caused water damage to the water heaters' circuit boards, making the water heaters inoperable.  Moreover, some catastrophic failures purportedly resulted in severe damage to customers' homes and businesses.

Microtherm subsequently brought suit against Puget under the DTPA in Texas state court.  After a lengthy trial, the jury found against Puget, concluding that Puget had knowingly: (1) "engaged in false, misleading or deceptive acts or practices"; (2) "engaged in an unconscionable action or course of action"; and (3) "failed to comply with a warranty."  The jury awarded Microtherm $22,340,000 in damages for lost profits, the diminution in the company's value due to its damaged reputation, and the costs of repairing and replacing the damaged water heaters.

After the state court entered judgment, Microtherm, Puget, and Puget's primary insurer entered into a post-judgment mediation.  Disclaiming coverage,

---

[1] The district court certified its order for an interlocutory appeal under 28 U.S.C. § 1292(b), and we permitted National Union to appeal.

[2] Cold water flowing into the Seisco is heated as it travels through the water chamber and out to an attached application such as an appliance, radiant heating system, or faucet.

National Union, Puget's commercial umbrella insurer, refused to participate. Under Puget's policy ("Policy"), National Union is liable for sums Puget becomes legally obligated to pay because of "property damage" caused by an "occurrence."[3] The Policy defined the term "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured." (emphasis added). National Union contended that Puget was not entitled to coverage because: (1) the damages the jury awarded did not stem from an occurrence; and (2) the damages for which Puget seeks coverage are not sums it became legally obligated to pay because of property damage.

Despite National Union's absence, the mediation continued. The mediation concluded when Puget and its primary insurer agreed to a settlement with Microtherm that included: (1) a payment of $2,000,000 from Puget's parent company, (2) a payment of $1,000,000 from the primary insurer, and (3) an assignment of Puget's rights under its policy with National Union.

Seeking a declaratory judgment against Puget, National Union filed suit in federal court. Puget counterclaimed, seeking coverage, and Microtherm intervened. All parties subsequently moved for summary judgment. On September 6, 2006, the district court denied National Union's motion for summary judgment and granted in part and denied in part summary judgment for the Appellees.[4] National Union now appeals, claiming that the jury's DTPA

---

[3] The Policy provides that:

[National Union] will pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay . . . because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury that takes place during the Policy Period and is caused by an Occurrence . . . .

[4] In granting partial summary judgment to Appellees, the district court made the same legal findings that underlie its denial of National Union's motion for summary judgment. See Nat'l Union Fire Ins. Co. of Pittsburgh v. Puget Plastics Corp., 450 F. Supp. 2d 682, 704-05 (S.D. Tex. 2006). Therefore, in appealing some of these findings, National Union appeals both

findings barred coverage and that the district court erred in concluding that it could consider evidence outside of these findings.

## II.

We review a grant of summary judgment de novo, applying the same standard as the district court. Hanks v. Transcon. Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case." Exxon Corp. v. Burglin, 4 F.3d 1294, 1297 (5th Cir. 1993). We review all evidence in the light most favorable to the nonmoving party. Id.

## III.

In Texas, the insured carries the burden to establish the insurer's duty to indemnify by presenting facts sufficient to demonstrate coverage. W. Alliance Ins. Co. v. N. Ins. Co. of N.Y., 176 F.3d 825, 831 (5th Cir. 1999). Under the Policy, Puget is entitled to coverage for sums it becomes legally obligated to pay because of "property damage" that is "caused by an occurrence." National Union contends that the jury findings in the underlying case preclude Appellees from showing that Puget's misconduct constitutes an occurrence. This argument lacks merit.

The Policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured." (emphasis added). In other words, an insured's conduct is an

---

the denial of its summary judgment motion and the partial grant of summary judgment to Appellees.

occurrence if it: (1) qualifies as an accident and (2) results in harm that the insured did not expect or intend. Because the Policy does not define the term "accident," we must interpret it in accordance with its "generally accepted or commonly understood meaning." See Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 8 (Tex. 2007). In Texas, deliberate acts may constitute an accident unless: (1) the resulting damage was "highly probable" because it was "the natural and expected result of the insured's actions," (2) "the insured intended the injury," or (3) the insured's acts constitute an intentional tort, in which case, the insured is presumed to have intended the injury. See id. at 8-9. In sum, Appellees cannot recover under the Policy if: (1) the injury to Microtherm was highly probable, (2) Puget intended or expected the injury inflicted on Microtherm, or (3) Puget committed an intentional tort.[5]

National Union argues that Puget's actions cannot constitute an occurrence because the jury found that Puget knowingly violated the DTPA.[6] This argument is unavailing because all we can definitively conclude from the jury's findings is that Puget's actions were deliberate. The jury made no determination as to: (1) whether Puget intended or expected the harm Microtherm ultimately suffered or (2) whether this harm was highly probable. Moreover, we cannot presume that Puget intended Microtherm's injuries because knowing violations of the DTPA are not intentional torts. See Pope v.

---

[5] In denying National Union summary judgment, the district court found that an intentional act is an accident unless: (1) the insured intended the resulting harm; or (2) the insured "should have reasonably expected the harm." Puget, 450 F. Supp. 2d at 694. But since the district court handed down its decision, the Texas Supreme Court has clarified the meaning of the term "accident" in the insurance context and explicitly found that foreseeability is not "the boundary between accidental and intentional conduct." Lamar Homes, 242 S.W.3d at 8.

[6] As discussed above, the jury found that Puget had knowingly: (1) "engaged in false, misleading or deceptive acts or practices"; (2) "engaged in an unconscionable action or course of action"; and (3) "failed to comply with a warranty."
The judge instructed the jury that the term "knowingly" means "actual awareness, at the time of the conduct, of the falsity, deception, or unfairness of the conduct in question or actual awareness of the conduct constituting a failure to comply with a warranty."

Rollins Protective Serv. Co., 703 F.2d 197, 201 (5th Cir. 1983) ("One of the primary reasons for the enactment of the DTPA was to provide consumers with a remedy for deceptive trade practices without the burdens of proof and numerous defenses encountered in a common law fraud or breach of warranty action."); see also Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc., 835 F.2d 541, 547 (5th Cir. 1987) (noting that it is more difficult to recover under a fraud claim than a DTPA claim in part because plaintiffs must establish proximate cause to demonstrate fraud but need only establish producing cause to demonstrate a DTPA violation). In this case, the evidence shows that, while Puget knowingly molded the water chambers using a lower melt temperature than that recommended by DuPont, it attempted to compensate by raising the mold temperature. An expert testified at trial that she believed this adjustment helped reinforce the integrity of the chambers. This combined evidence creates a genuine issue of material fact as to whether Puget expected the chambers to rupture, or whether the ruptures were highly probable. See Ohio Cas. Ins. Co. v. Terrace Enter., Inc., 260 N.W.2d 450, 452-53 (Minn. 1977) (finding an "occurrence" when an insured knowingly ignored an expert's recommendations but took other precautions that it erroneously thought would compensate). In sum, National Union would have us find that any knowing misconduct cannot constitute an accident–however improbable the damages turn out to be. Because Lamar Homes precludes this result, we reject it here. Accordingly, the jury's findings do not bar Appellees from establishing an occurrence as a matter of law.

IV.

To recover under the Policy, Appellees must also prove that the damages they demand resulted from "property damage."[7]   In this coverage action, Appellees seek indemnity for consequential damages–Microtherm's lost profits and diminution in value that resulted from the damage to its water heaters.[8] National Union argues that the Policy simply does not cover consequential damages.  This argument lacks merit.  See Todd Shipyards Corp. v. Turbine Serv., Inc., 674 F.2d 401, 418, 423 (5th Cir. 1982) (finding the insurer liable for consequential damages resulting from covered property damage when the policy provides coverage for liabilities that arise "because of" property damage); see also Am. Home Assurance Co. v. Libbey-Owens-Ford Co., 786 F.2d 22, 26 (1st Cir. 1986) (noting that the clause "because of property damage" in insurance coverage provisions allows recovery for consequential losses attributable to property damage).

Alternatively, National Union claims that, even if Appellees could recover consequential damages, these damages must stem from "covered" property damage.  Under the Policy, property damage is "[p]hysical injury to tangible property" and "[l]oss of use of tangible property."  The Policy, however, contains an exclusion for damage to "impaired property."  Impaired property is defined as: (1) damage to the insured's own product or (2) damage to third-party property that incorporates the insured's product when the third-party property is functional upon repairing or replacing the insured's product.  Therefore, the

---

[7] The Policy provides that Puget is entitled to coverage only for sums it became "legally obligated to pay . . . because of Bodily Injury, Property Damage, Personal Injury or Advertising Injury."  Because Appellees do not contend that the damages they seek resulted from bodily injury, personal injury, or advertising injury, we do not analyze whether Appellees may recover under these other bases.

[8] While the jury in the underlying case also awarded Microtherm the costs of repairing and replacing the water chambers, the district court properly found that Puget cannot recover these damages because they fall under the Policy's impaired property exclusion.  Puget, 450 F. Supp. 2d at 697.

Policy does not cover: (1) damage to the Puget-manufactured water chambers and (2) damage to Microtherm's water heaters that can be fixed by repairing or replacing the Puget-manufactured water chambers.[9]

In sum, the crux of National Union's argument is that the impaired property exclusion may preclude coverage in this case and that Appellees failed to carry their burden to establish that the exclusion is inapplicable here. While National Union acknowledges that Puget's conduct damaged Microtherm's water heaters, National Union contends that it is entitled to summary judgment because Appellees failed to adduce any evidence that the damage does not constitute impaired property damage. In other words, National Union claims that there is no evidence that the damaged heaters cannot be fixed by repairing or replacing the water chambers.

National Union's argument is unavailing because the burden is on National Union to establish that the impaired property exclusion applies. Lone Star Heat Treating Co. v. Liberty Mut. Fire Ins. Co., 233 S.W.3d 524, 526 (Tex. App. 2007) ("Although the insured bears the burden to prove its claim falls within the scope of coverage afforded by the policy, the insurer bears the burden to prove an exclusion precludes coverage."); see also Tex. Ins. Code § 554.002 ("Language of exclusion in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense."). Therefore, even if National Union is correct that Appellees did not present evidence demonstrating that the damage to Microtherm's heaters qualified as covered property damage, National Union is not entitled to summary judgment on that basis. Summary judgment was proper only if National Union demonstrated that there was no genuine issue of

---

[9] For this reason, as discussed above in footnote eight, the district court correctly found that Puget cannot recover the costs of repairing and replacing the water chambers.

material fact that Microtherm suffered only impaired property damage–which it failed to do in this case.

## V.

Finally, we find that the district court properly concluded that Appellees may present evidence at trial regarding facts necessary to determine coverage that were not adjudicated in the underlying case. The underlying case often does not resolve all the factual issues necessary to determine coverage because issues relevant to the question of coverage can be irrelevant to the question of the insured's liability. See Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co., 141 S.W.3d 198, 204 (Tex. 2004) ("It may sometimes be necessary to defer resolution of indemnity issues until the liability litigation is resolved."). For example, in this case, the jury in the underlying trial had no reason to consider: whether Puget intended or expected the injury suffered by Microtherm, whether this injury was highly probable, or whether the damage to Microtherm's water heaters is covered property damage. Therefore, courts are not precluded from making factual findings in coverage actions.[10] Otherwise, insureds, such as Puget, can never establish coverage whenever there is an underlying trial and an issue irrelevant to liability but essential to coverage.

## VI.

For the reasons stated above, we AFFIRM.

---

[10] While some courts have made broad statements that ostensibly suggest that courts in coverage actions cannot make new factual findings, these cases are distinguishable. For example, National Union is correct that the court in Hartrick v. Great American Lloyds Insurance Co. stated that "[n]o duty to indemnify arises unless the underlying litigation establishes liability for damages covered by the insuring agreement of the policy." 62 S.W.3d 270, 275 (Tex. App. 2001). But in Hartrick, the adjudicated facts made clear that the insured was not entitled to coverage because there was no occurrence. Id. at 277-78. Therefore, Hartrick does not address cases where there either is no underlying litigation or the underlying litigation does not provide all the factual findings necessary to determine coverage.