**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 11, 2011

No. 10-20726

Lyle W. Cayce
Clerk

MID-CONTINENT CASUALTY COMPANY,

Plaintiff - Appellee

v.

LEIGH ANNE BROCK,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-3002

Before WIENER, CLEMENT, and ELROD, Circuit Judges.

PER CURIAM:[*]

This is an insurance coverage dispute stemming from restoration work performed by Plaintiff-Appellee Mid-Continent Casualty Company's ("Mid-Continent") insured, non-party John Ashley Strickling, after a fire at Defendant-Appellant Leigh Anne Brock's Texas home. Brock appeals the district court's declaratory judgment that Mid-Continent had no duty to indemnify Strickling for a judgment obtained by Brock in an underlying Texas state court lawsuit.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Based solely upon the jury's findings in the underlying lawsuit, the district court held that Strickling's conduct was intentional and that the damages suffered by Brock did not arise from an "occurrence" as defined by the policy, thereby precluding any duty to indemnify. We disagree and REVERSE and REMAND this case for further proceedings.

## FACTS AND PROCEEDINGS

The determined facts are remarkably simple. Brock's home was significantly damaged in a fire. Strickling, the owner of Restoration Services of Houston and Fire Restoration Services of Houston, approached Brock and offered to restore and remediate her home, and a deal was reached. The job went poorly. Brock brought suit against Strickling in Texas state court,[1] alleging causes of action sounding in negligence, breach of contract, conversion and unjust enrichment, and the Texas Deceptive Trade Practices-Consumer Protection Act (the "DTPA").[2] The jury rendered a verdict in favor of Brock.

Specifically, the jury answered the following relevant questions affirmatively:

> (1) Did John Ashley Strickling engage in any false, misleading, or deceptive act or practice that Leigh Anne Brock relied on to her detriment and that was a "producing cause" of damages to Leigh Anne Brock?
>
> . . .
>
> (2) Did John Ashley Strickling engage in any unconscionable action or course of action that was a producing cause of damages to Leigh Anne Brock?
>
> . . .

---

[1] Brock also sued ASI Lloyds, Inc., her insurer.

[2] Mid-Continent defended Strickling at trial.

2

(4) Did John Ashley Strickling engage in any such conduct knowingly and/or intentionally?

The commercial general liability policy issued by Mid-Continent to Strickling covers damages that Strickling is legally obligated to pay for "bodily injury" or "property damage" caused by an "occurrence." As defined in the policy, "'[o]ccurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Before the state court entered final judgment in the underlying lawsuit, Mid-Continent filed this lawsuit in federal court, seeking a declaratory judgment that it did not have a duty to indemnify Strickling for damages awarded in the underlying lawsuit. Mid-Continent moved for summary judgment, arguing that the verdict in the underlying lawsuit established that the damages did not arise out of an "occurrence," thus precluding any duty to indemnify. The district court referred Mid-Continent's motion to a magistrate judge for resolution. The magistrate judge issued a report and recommendation ("R&R") recommending that Mid-Continent's motion be granted. After reviewing Brock's objections, the district court accepted the R&R and entered final judgment in favor of Mid-Continent. Brock timely appealed.

## STANDARD OF REVIEW

"The grant or denial of a motion for summary judgment is reviewed *de novo*." *Smith v. Am. Family Life Assurance Co. of Columbus*, 584 F.3d 212, 215 (5th Cir. 2009). Summary judgment is proper only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). We review all evidence in the light most favorable to the nonmoving party.

3

## DISCUSSION

The parties agree that Texas law governs this dispute. "In Texas, the insured carries the burden to establish the insurer's duty to indemnify by presenting facts sufficient to demonstrate coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008) (citations omitted). Under the Mid-Continent policy, Strickling is entitled to indemnification for damages that he becomes legally obligated to pay because of "property damage" or "bodily injury" that is "caused by an occurrence." Strickling is legally obligated to pay Brock the sums awarded in the underlying lawsuit. The district court ruled that the jury findings in the Texas state court case compel the conclusion that the damage to Brock's house was not "caused by an occurrence." We disagree.

The Mid-Continent policy defines the term "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in Bodily Injury or Property Damage neither expected nor intended from the standpoint of the Insured." "In other words, an insured's conduct is an occurrence if it: (1) qualifies as an accident and (2) results in harm that the insured did not expect or intend." *Puget Plastics Corp.*, 532 F.3d at 401–02. Like most commercial general liability policies, the Mid-Continent policy does not define the term "accident." 9A COUCH ON INSURANCE § 129:3 (3d ed. 2010). Therefore, we must interpret it in accordance with its "generally accepted or commonly understood meaning." *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). In Texas, deliberate acts may constitute an accident unless: (1) the resulting damage was "highly probable" because it was "the natural and expected result of the insured's actions"; or (2) "the insured intended the injury." *See id.* at 8–9. Intent is presumed in cases of intentional tort. *Id.*

4

The focus of the inquiry as to the intent or expectation of the insured is whether the *harm* was intended or expected, not whether the conduct itself was intended or expected. Texas courts have rejected the notion that "if an actor intended to engage in the conduct that gave rise to the injury, there can be no 'accident.'" *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997) (noting that "this construction of the term 'accident' would render surplusage the intentional injury exclusion of many insurance policies").

"The determination of whether an insured's faulty workmanship was intended or accidental is dependent on the facts and circumstances of the particular case." *Lamar Homes*, 242 S.W.3d at 9. Cognizant that "[t]he underlying case often does not resolve all the factual issues necessary to determine coverage because issues relevant to the question of coverage can be irrelevant to the question of the insured's liability," *Puget Plastics*, 532 F.3d at 404, we turn to the adjudicated facts of the underlying lawsuit. Parroting the *Lamar Homes* test, Mid-Continent argues that the jury's verdict establishes (1) that Brock's damages were "highly probable because they were the natural and expected result of Strickling's action" and (2) that Strickling "actually intended the injury." The district court agreed with Mid-Continent's first argument, holding that "the jury's verdict makes it clear that the injuries to Brock were the reasonably foreseeable result of Strickling's failure to do what he said he was going to do." We consider each argument in turn.

A.   *Does the jury's verdict demonstrate that Brock's damages were "highly probable" because they were "the natural and expected result" of Strickling's actions?*

First, the jury's verdict does not establish that Brock's damages were highly probable because they were the natural and expected result of Strickling's action. The jury found that Strickling engaged in a "false, misleading or

deceptive act or practice" and an "unconscionable action or course of action" that was a *producing cause* of Brock's damages.  The state court instructed the jury that a "producing cause" is "an efficient, exciting, or contributing cause that, in a natural sequence, produced the damages, if any."  But the jury finding that Strickling's action was a "producing cause" of Brock's damages does not establish whether those damages were a natural *and expected* result of his action. Proof of producing cause does not require a showing that an accident was foreseeable. *General Motors Corp. v. Saenz ex rel. Saenz*, 873 S.W.2d 353, 357 (Tex. 1993). The jury made no determination as to whether Brock's damages were the *expected* result of Strickling's action, much less whether the damages were highly probable.

B.    *Does the jury's verdict demonstrate that Strickling intended to injure Brock?*

Next, the jury's verdict does not establish that Strickling actually intended the damages or injuries that are the subject of the underlying lawsuit. To be sure, the verdict shows that Strickling intentionally engaged in *conduct* that led to Brock's injuries. But, as Mid-Continent concedes, Texas law draws a distinction between the intent to engage in an act and the intent to injure. *See Bituminous Cas. Corp. v. Vacuum Tanks*, 75 F.3d 1048, 1054 (5th Cir. 1996) ("[U]nder Texas law the focus is not on whether the insured's conduct or actions were intentional, but on whether the insured intended the damages or injuries which are the subject of the underlying claims.").

The jury instructions defined "intentionally" as "actual awareness of the falsity, deception, or unfairness of the conduct in question . . . coupled with the specific intent that the consumer act in detrimental reliance on the falsity or deception." The jury awarded damages to Brock for loss of the benefit of the

bargain, loss of market value, loss of contents of the residence, loss of credit, and mental anguish. Mid-Continent argues that because "detriment" means "damage" or "injury,"[3] the jury's conclusion that Strickling intended Brock to act in detrimental reliance means that he intended to cause the specific damages Brock suffered. But that "detrimental reliance," a legal term of art, is not synonymous with "detriment" needs little comment.

In *Puget Plastics*, we held that "knowing violations of the DTPA are not intentional torts." 532 F.3d at 402. Here, and unlike in *Puget Plastics*, the jury found that Strickling acted both "knowingly" and "intentionally." Mid-Continent argues that Strickling's DTPA violations "equate" with an intentional tort, and, as such, we should infer that he intended Brock's injuries. But "an insured intends to injure or harm another if he intends the consequences of his act, or believes that they are substantially certain to follow." *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex. 1993) (citing RESTATEMENT (SECOND) OF TORTS § 8A (1965)). Even assuming *arguendo* that an intentional violation of the DTPA is an intentional tort, the only thing we can presume on this record is that Strickling intended to "engage in a false, misleading, or deceptive act or practice" and that he intended Brock to "act in detrimental reliance on the falsity or deception." That his conduct *resulted* in the types of injuries suffered by Brock does not establish that Strickling *intended* those injuries. Indeed, examining the "damages or injuries which are the subject of the underlying claims," *Bituminous Cas. Corp.*, 75 F.3d at 1054, the jury verdict, standing alone, does not support the district court's conclusion that Strickling intended Brock to suffer those

---

[3] *See* BLACK'S LAW DICTIONARY 515 (9th ed. 2009) (defining detriment as "any loss or harm suffered by a person or property").

injuries, particularly the loss of contents of the residence, the loss of credit, and mental anguish.

## CONCLUSION

The jury verdict does not answer the critical question of whether Strickling intended that Brock suffer "the damages or injuries which are the subject of the underlying claims." *Bituminous Cas. Corp.*, 75 F.3d at 1054. In order to meet the requirement of *Lamar Homes*, 242 S.W.3d at 8–9, there must be more than a finding that the damages Strickling caused, particularly the loss of the contents of the residence and the loss of credit, were merely natural, probable, or foreseeable. Instead, there must be a determination by the district court as to whether the damages were expected or intended.

We decline to reach Mid-Continent's alternative argument that very little of the damages awarded by the jury constituted "bodily injury" or "property damage" as required by the policy, leaving that determination to be made in the first instance by the district court.

The judgment of the district court is REVERSED and REMANDED for further proceedings consistent with this opinion.