# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-20213

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2015

Lyle W. Cayce
Clerk

EVANSTON INSURANCE COMPANY,

Plaintiff - Appellee

v.

LAPOLLA INDUSTRIES, INCORPORATED,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-3157

Before DAVIS, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Lapolla Industries, Incorporated ("Lapolla") appeals from the district court's grant of summary judgment in favor of Plaintiff-Appellee Evanston Insurance Company ("Evanston"), declaring that Evanston owes no duty to defend Lapolla in a lawsuit brought against Lapolla

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-20213

and other defendants in Connecticut. On de novo review, applying the same Rule 56 standards as the district court,[1] we affirm for the reasons set out below.

In its memorandum opinion and order entered on February 23, 2015, the district court summarized the background, which is not in dispute, as follows:

> Lapolla Industries, a citizen of Texas and Delaware, manufactures spray polyurethane foam ("SPF") insulation. Evanston Insurance Company, a citizen of Illinois, issued Lapolla three insurance policies, two commercial general liability ("CGL") policies and one excess liability policy. The policies required Evanston to defend Lapolla against underlying suits seeking damages for bodily injury or property damage caused by Lapolla's products. The policies also obligated Evanston to indemnify Lapolla for these damages. The policies excluded coverage for damages for bodily injury or property damage that "would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time." The policies defined "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, electromagnetic fields and waste."
>
> This lawsuit stems from underlying litigation arising from Lapolla insulation installed during a home renovation. In April 2010, during a covered period, the plaintiffs' renovation contractors installed Lapolla-manufactured SPF insulation in the part of a home owned by Michael and Kimberly Commaroto that was being renovated. The Commarotos and their house guest, Gretchen Schlegel, were not living in the part of the home undergoing renovations. They complained that shortly after the insulation was installed in a renovated room, they smelled odors and suffered respiratory distress, causing them to leave the home. Attempts to return triggered the same respiratory

---

[1] *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 348 (5th Cir. 2007).

distress symptoms. The plaintiffs moved out permanently, leaving their personal property.

In April 2012, the plaintiffs sued the general contractor and various subcontractors for negligence and breach of contract. *Michael A. Commaroto, Kimberly S. Commaroto and Gretchen Schlegel v. Pasquale Guzzo, AKA Pasqualino Guzzo d/b/a PDB Home Improvement, Perfect Wall, LLC and Jozsef Finta,* No. FST–CV12–6013645S, Judicial Dist. Stamford, Ct. In July 2012, the contractors filed an apportionment complaint and a third-party complaint against Lapolla. In the plaintiffs' second amended complaint, filed in April 2013, they also asserted a products-liability claim against Lapolla, alleging that it manufactured, sold, and marketed its SPF insulation in a defective and unreasonably dangerous manner.

In 2013, Evanston filed this diversity-jurisdiction suit in Texas federal court. Evanston sought a declaratory judgment that it has no duty to defend or indemnify Lapolla because of the policies' pollution exclusions. After Evanston amended its complaint, Lapolla answered and counterclaimed for a declaratory judgment that Evanston was obligated to defend and indemnify. In April and May 2014, Evanston and Lapolla cross-moved for summary judgment.[2]

Both parties agree that this dispute falls under Texas law, under which a court must interpret the insurance contract using the ordinary rules for contract interpretation.[3] The insured has the initial burden of proving coverage.[4] If so, the insurer then bears the burden of proving that a policy

---

[2] *Evanston Ins. Co. v. Lapolla Indus., Inc.*, 93 F. Supp. 3d 606, 609-10 (S.D. Tex. 2015) (footnote and record citations omitted).

[3] *Id.* at 611-12 (citing, among other cases, *Sharp v. State Farm Fire & Cas. Ins. Co.*, 115 F.3d 1258, 1260 (5th Cir. 1997); *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex. 2006); and *Lamar Homes, Inc. v. Mid–Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007)).

[4] *Id.* at 612 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008)).

exclusion bars coverage.[5] If the insurer is successful, then the burden shifts back to the insured to prove that the claim at issue falls under an exception to the exclusion.[6] Central to this dispute is the eight-corners rule, which "provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from [the] terms of the policy and the pleadings of the third-party claimant."[7] In this case, therefore, we look to the four corners of the applicable policies and the four corners of the Commaroto complaint. Lapolla is entitled to coverage if it can demonstrate any covered, non-excluded claim asserted in the Commaroto complaint. It cannot.

As noted above, the policies at issue include total pollution exclusion that excludes coverage for:

> f. Pollution
>
> (1) "Bodily Injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> ....
>
> Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, electromagnetic fields and waste. Waste includes materials to be recycled, reconditioned or reclaimed.[8]

As the district court explained, Texas courts have held that such exclusions are not ambiguous.[9] "The key is whether the plaintiffs' operative pleading

---

[5] *Id.* (citing *Puget Plastics Corp.*, 532 F.3d at 404).

[6] *Id.* (citing *Century Sur. Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009)).

[7] *Id.* (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church,* 197 S.W.3d 305, 307 (Tex. 2006)).

[8] *Evanston,* 93 F. Supp.3d at 614 (quoting policies).

[9] *Id.* (citing *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 646 (5th Cir. 2008); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus.*, 907 S.W.2d 517, 521 (Tex.

allegations fall within the pollution exclusion's plain terms—that is, whether the allegations about what 'caused the [plaintiffs'] injuries arose out of [the actual, alleged, or threatened] discharge, dispersal, release or escape of pollutants.'"[10]

Turning to the Commaroto complaint, the district court quoted extensively from what it determined to be the relevant facts: those set out in the general "Summary of Facts" section and those in the single products liability count against Lapolla. Although Lapolla argued below and on appeal that the district court should have restricted its inquiry to only the count against Lapolla and the five paragraphs from the "Summary of Facts" specifically incorporated by reference into that count, our de novo review convinces us that there is no material difference between the sets of facts.[11] Because there is no material difference between the two sets of facts, this argument is irrelevant.

The district court summarized the operative facts as follows:

> The plaintiffs' operative pleading alleges that vapors from the SPF insulation caused their bodily injuries and property damage. According to the second amended complaint, the defendants "failed to seal off completely areas in which vapors could be transported from the areas under renovation and construction to the existing area[] of the house[,] in which the Commarotos, their three minor children, and their houseguest, Schlegel, were living and sleeping during the construction process." (Docket Entry No. 24, ¶ 30). As a result, the plaintiffs allegedly suffered adverse health effects, incurred costs in investigating and

---

1995); and *Zaiontz v. Trinity Universal Ins. Co.*, 87 S.W.3d 565, 571 (Tex.App.-San Antonio 2002, pet. denied)).

[10] *Id.* (quoting *Noble*, 529 F.3d at 646; some internal quotation marks omitted).

[11] It is curious that Lapolla seeks to ignore most of the "Summary of Facts" section, which unquestionably provides context for the entire Commaroto lawsuit, while simultaneously arguing that it should be allowed to introduce extrinsic evidence.

remediating the situation, and suffered property losses in the form of personal belongings affected by the vapor and their inability to use their newly renovated home. (*See id.*, ¶¶ 31 (describing the failure to contain "vapors" from the SPF insulation), 38 (alleging a "strong odor" and "symptoms of respiratory distress"), 41 ("respiratory distress"), 45 ("upper respiratory injury"), 46 ("exposure to" the residence and property within it "at the time" of the SPF installation), 48 (loss of possessions "that were present in the home at the time of the installation of the SPF insulation"), 49 (costs incurred for "alternative living, food, property, clothes, [and] medical expenses" and "to investigate and remediate the damage causes"), 158 ("upper respiratory injury"), 159 ("exposure to their residence itself and from exposure to the personal property that was present ... at the time the product was installed"), 162 ("costs to investigate and remediate the damages caused by the use of the product in the home").[12]

Thus, in the district court's reading, all of the allegations in the Commaroto complaint fell under the pollution exclusion, and Evanston is therefore entitled to entry of a final judgment declaring that it has no duty to defend Lapolla in the Commaroto suit. We agree. A plain reading of the complaint shows that all of the plaintiffs' injuries, both personal injury and property damage, were alleged to have been caused by "pollution" as defined by the policies.

We also agree with the district court's assessment of Lapolla's arguments, which Lapolla continues to assert on appeal:

Lapolla points to the plaintiffs' allegations about the "presence of the product in their home" and argues that these allegations do not trigger the pollution exclusion. Lapolla contends that the second amended complaint "makes a clear distinction between alleged injuries and damages resulting from SPF installed in

---

[12] *Evanston*, 93 F. Supp.3d at 618.

their home versus those allegedly caused by 'vapors' allegedly released from the SPF after it was installed." The distinction is between the harm caused by the mere presence of the SPF in the part of the home undergoing renovations, as opposed to the harm caused by the release of vapors to the parts of the home where the plaintiffs were living, including the guest room adjacent to the room in the renovation area where the insulation was sprayed.

Lapolla distinguishes between damage from exposure to vapors resulting from the installation process used by the defendants,[] and one plaintiff's "expos[ure] for hours to the newly—applied SPF insulation." The second allegation, Lapolla contends, suggests harm from physical contact or the mere presence of the SPF in the part of the home undergoing renovation, rather than harm from the release of vapors from that part of the home to the rest of the residence where the plaintiffs were living and their personal possessions were located. The allegations undermine this distinction. The allegations include that "[b]efore beginning the application of the SPF insulation, the defendants failed to seal off completely areas in which vapors could be transported from the areas under renovation and construction to the existing areas of the house in which the Commarotos, their three minor children, and their houseguest, Schlegel, were living and sleeping during the construction process." The factual allegations about the Lapolla SPF insulation make clear that it was present only in the part of the house undergoing renovation, and that the bodily harm to the Commarotos and their guest, and the damage to their personal property, occurred when vapors migrated to the rooms where the Commarotos lived and their guest was staying.[13]

As the district court properly explained, not only is Lapolla's reading factually unsupported by the complaint, but case law supports the conclusion that the

---

[13] *Id.* at 618-19 (citations to record omitted).

alleged damages arose from "the release and migration of [the insulation's] vapors" rather than from "the presence of the insulation itself."[14] Based on a plain reading of the Commaroto complaint, we must conclude that all of the alleged injuries arose from "pollution," as defined by the policies, and are thus excluded.

On appeal, Lapolla has attempted to refine its position, arguing: "To be sure, the Commarotos could still argue that although the 'unsafe and dangerous' SPF may not pose a health risk, like asbestos, left undisturbed, it may still negatively affect the value of their home." But that argument misses the point of the eight-corners rule: we must examine the complaint as it exists now, not as it might exist under different circumstances. As currently pleaded, every claim in the Commaroto complaint falls under the pollution exclusion, and none falls under an exception to that exclusion.

Finally, Lapolla argues that we should apply an exception to the eight-corners rule that would allow us to look beyond the factual allegations in the complaint to extrinsic evidence—specifically, deposition testimony by two of the plaintiffs stating that they physically touched and examined the spray foam insulation. Lapolla concedes that the district court applied the correct standard for this exception under *Star-Tex Resources, L.L.C. v. Granite State Insurance Co.*, 553 F. App'x 366 (5th Cir. 2014), i.e., that the court may only look beyond the eight corners of the complaint and policy to extrinsic evidence "when it is initially impossible to discern whether coverage is potentially implicated and when the extrinsic evidence goes solely to a fundamental issue of coverage which does not overlap with the merits of or engage the truth or falsity of any facts alleged in the underlying case."[15] Lapolla argues that

---

[14] *Id.* at 619-20 (discussing *Hamm v. Allstate Ins., Co.*, 286 F. Supp. 2d 790 (N.D. Tex. 2003); and *Nautilus Ins. Co. v. Country Oaks Apts. Ltd.*, 566 F.3d 452, 457 (5th Cir. 2009)).

[15] 553 F. App'x at 371.

extrinsic evidence is allowed because, in its view, it is impossible to tell from the Commaroto complaint whether the plaintiffs' personal injuries were caused by physical contact with the insulation or vapors. As set out above, we conclude otherwise. The Commaroto complaint entirely concerns damages from vapors and says nothing to suggest damages from physical contact with the spray foam insulation. Because it is not "impossible to discern whether coverage is potentially implicated," Lapolla cannot satisfy the first part of the test. Accordingly, the district court properly excluded the extrinsic evidence.

Following de novo review of the summary judgment record, we reach the same conclusion reached by the district court in its excellent and thorough opinion. We conclude, essentially for the reasons set out in that opinion as supplemented above, that Evanston is entitled to a judgment declaring that Evanston owes no duty to defend Lapolla in the Commaroto suit.

AFFIRMED.