# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-50108

United States Court of Appeals
Fifth Circuit

**FILED**
March 22, 2019

Lyle W. Cayce
Clerk

WORD OF LIFE CHURCH OF EL PASO; TOM BROWN,

Plaintiffs - Appellants

v.

STATE FARM LLOYDS,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:17-CV-49

Before JONES, HAYNES, and OLDHAM, Circuit Judges.

PER CURIAM:*

This is an insurance coverage dispute. Appellants Word of Life Church of El Paso and Tom Brown appeal the district court's grant of summary judgment in favor of appellee State Farm Lloyds. For the reasons set forth below, as to the issues raised in this appeal, we REVERSE and REMAND. The remainder of the district court's judgment stands.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-50108

## I.     Background

Appellant Tom Brown[1] is the president, chairman of the board of directors, and pastor of Appellant Word of Life Church of El Paso ("WOL Church" or the "Church").

### A. The Insurance Policy

The Church maintained an insurance policy (the "Policy") with Appellee State Farm Lloyds ("State Farm").  Among other things, the Policy contains a "duty to defend" clause giving State Farm "the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent."

The Policy also includes a Directors, Officers, and Trustees Liability Provision (the "D&O Provision").  The D&O Provision states:

> [State Farm] will pay those sums that the insured becomes legally obligated to pay as damages because of "wrongful acts" committed by an insured[2] solely in the conduct of their management responsibilities for the church.

The D&O Provision defines "wrongful acts" as "any negligent acts, errors, omissions, or breach of duty directly related to the operations of your church." Finally, as relevant here, the D&O Provision has a "criminal acts" exclusion, which states that D&O coverage "does not apply to . . . any dishonest, fraudulent, criminal or malicious act, including fines and penalties resulting from these acts."

---

[1] Brown also uses the entity name "Tom Brown Ministries" or "TBM."  Tom Brown Ministries maintains a website with information about the Church, along with information about Brown's books, speaking schedule, and other matters.

[2] It is undisputed that Brown qualifies as an insured under the Policy.

No. 18-50108

## B. The Recall Campaign

Brown chaired a specific-purpose political committee called El Pasoans for Traditional Family Values ("EPTFV"), which was created to support a measure on the November 10, 2010 election ballot. Brown and EPTFV led an effort to pass Ordinance No. 017546, called the "Traditional Family Values Ordinance," which provided that "the city of El Paso endorses traditional family values by making health benefits available only to city employees and their legal spouse and dependent children."

Voters approved the Traditional Family Values Ordinance. But the El Paso City Council subsequently amended the Ordinance to restore benefits to individuals who would have lost their benefits. Mayor John F. Cook ("Cook") cast the tie-breaking vote in favor of amending the ordinance.

Brown and EPTFV then began circulating recall petitions seeking a recall election to remove Cook and two other elected representatives from office. Brown announced the recall campaign from the Church pulpit. The state court of appeals later found that: (1) Brown used the WOL Church/TBM website to recruit volunteers to circulate recall petitions; (2) the website provided an electronic form through which people could register to circulate recall petitions; (3) the website added a list of locations, including WOL Church, where recall petitions could be found; and (4) the website included a link for the recall of the mayor and representatives. *See Cook v. Tom Brown Ministries*, 385 S.W.3d 592, 602–03 (Tex. App.—El Paso 2012, pet. denied). But the site also listed a disclaimer stating, "This internet site is owned by Tom Brown and not the Church. Tom Brown in his official capacity as pastor of Word of Life Church neither encourages or [sic] discourages the recall of the Mayor and Representatives." Brown also wrote in a statement on the Church website that the purpose of the recall was "to help restore the rights of the voters."

3

No. 18-50108

## C. The State Lawsuit

Cook sued WOL Church in state court for violating Texas Election Code §§ 253.094(b) and 253.031(b)[3] in circulating and submitting the recall petitions and raising and spending money for the recall effort. Section 253.094(b) regulates corporate political contributions in the context of a recall election. *See* TEX. ELEC. CODE ANN. § 253.094(b). Section 253.031(b) regulates political committees' political expenditures and acceptance of political contributions when the committee lacks a campaign treasurer. *See id.* § 253.031(b). The trial court issued a temporary restraining order ("TRO") enjoining any further circulation of recall petitions. Brown intervened, seeking to dissolve the TRO. The trial court then dissolved portions of the TRO and denied Cook's request for injunctive relief.

Cook appealed. The El Paso Court of Appeals reversed the trial court's order denying injunctive relief. In so doing, the court of appeals found violations of Texas Election Code §§ 253.094(b) and 253.031(b). *See Cook*, 385 S.W.3d at 603. The court of appeals concluded that "WOL Church made campaign contributions from its own property in connection with a measure-only recall election without properly making the contributions to a measure-only committee" in violation of Texas Election Code § 253.096. *Cook*, 385 S.W.3d at 603. It further concluded that "WOL Church, a corporation, made a political contribution in connection with a recall election, including the circulation and submission of petitions to call an election, and failed to make

---

[3] Cook also argued that Brown and WOL Church violated Election Code §§ 253.003 and 253.005 in connection with their violations of § 253.031. Section 253.003 prohibits "knowingly mak[ing] a political contribution in violation of" Chapter 253 or "knowingly accept[ing] a political contribution the person knows to have been made in violation of this chapter." TEX. ELEC. CODE ANN. § 253.003. Section 253.005 forbids "knowingly mak[ing] or authoriz[ing] a political expenditure wholly or partly from a political contribution the person knows to have been made in violation of this chapter." *Id.* § 253.005.

No. 18-50108

such contribution to a political committee" in violation of Texas Election Code §§ 253.096 and 253.094(b).  *Cook*, 385 S.W.3d at 603.

The court of appeals ordered the El Paso City Clerk to decertify the recall petition and rescind the scheduled recall election.  WOL Church appealed to the Texas Supreme Court, but the Court denied WOL Church's petition for review.

The state trial court then entered an order granting Cook's motion for partial summary judgment and finding Brown and WOL Church liable to Cook for violations of the Texas Election Code.  Before the case could proceed to trial, WOL Church and Brown entered into an agreed judgment with Cook stating that they were liable to him for $475,000 in damages.

## D. The Coverage Dispute

Before the state court of appeals issued its decision, WOL Church submitted its first claim to State Farm for defense and indemnification in the Cook lawsuit.  But after the court of appeals issued its decision, WOL Church and Brown informed State Farm that because the court had awarded no fees, they were not making a claim at that time.

Nearly a year later, WOL Church and Brown submitted their second claim for defense and indemnification to State Farm.  State Farm informed them that it did not have a duty to defend or indemnify them based on the allegations in Cook's third amended petition.  Over three years after State Farm's refusal, WOL Church and Brown asked State Farm to reconsider its coverage decision based on Cook's fourth amended petition.  State Farm refused, claiming that Cook's fourth amended petition was nearly identical to his third amended petition, so its reasoning for denying coverage still applied.

WOL Church then made demand on State Farm for $475,000 plus interest based on the agreed judgment in the Cook lawsuit, along with an additional $450,000 plus interest for attorney's fees.  State Farm responded

5

that no basis existed to reimburse or indemnify Brown and WOL Church because the Policy did not cover their claim.

## E. The Federal Suit

Brown and WOL Church sued State Farm for breach of contract, unjust enrichment, and bad faith insurance dealing. State Farm removed the case to federal court on diversity grounds. It then moved for summary judgment.

The district court granted State Farm's summary judgment motion, concluding in relevant part that State Farm had no duty to defend or indemnify Brown under the D&O Provision because Brown's actions were not "directly related to the operations" of WOL Church. In so doing, the district court expressly held that there was a fact question as to whether the Election Code errors were unintentional on Brown's part, but concluded that there was no factual dispute as to whether they were "directly related" to the Church's operations. Brown and WOL Church appealed the adverse ruling under the D&O Provision.[4]

## II.     Standard of Review

We review a district court's grant of summary judgment *de novo*. *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 329 (5th Cir. 2014). The movant is entitled to summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (citing FED. R. CIV. P. 56(a)). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] They did not appeal the adverse summary judgment on the "advertising injury" claims and the extra-contractual claims, so we do not reach those issues. The district court's judgment as to those matters stands.

No. 18-50108

An insurance policy is a contract, and it is interpreted using Texas's normal rules of contract construction. *See State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010). Our "goal is to determine the contracting parties' intent through the policy's written language." *Id.* "Terms that are not defined in a policy are given their generally accepted or commonly understood meaning." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 8 (Tex. 2007). If a term is ambiguous, we adopt the interpretation that favors coverage. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991).

## III.    Discussion

### A. State Farm Had a Duty to Defend.

1.    "Eight Corners" Analysis

An insurer has a duty to defend whenever the policy potentially covers at least one claim in the underlying litigation. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006) ("A plaintiff's factual allegations that potentially support a covered claim [are] all that is needed to invoke the insurer's duty to defend."). We analyze the duty to defend under the "eight corners" rule: "courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014). We "focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Any doubt about whether "allegations . . . state a cause of action within the coverage" is "resolved in the insured's favor." *Id.*

7

No. 18-50108

The D&O Provision covers "those sums that the insured becomes legally obligated to pay as damages because of 'wrongful acts'" the insured commits. It defines "wrongful acts" as "any negligent acts, errors, omissions, or breach of duty directly related to the operations of your church." The D&O Provision does not define "operations." Relying on Webster's Third New International Dictionary, the district court interpreted the term to mean "the whole process of planning for and operating a business or other organized unit."

The district court concluded that State Farm did not have a duty to defend Brown because his alleged actions in leading the recall campaign were not "directly related to the operations of" WOL Church.[5] We disagree. Cook alleged that Brown was liable for violating Election Code provisions that govern corporations, not individuals, based on his status as a director of WOL Church. Cook essentially claimed that Brown caused the Church to violate the Election Code. He thus alleged that Brown's activities were directly related to the Church's operations. Looking only to Cook's operative petition and the D&O Provision, *see Ewing*, 420 S.W.3d at 33, we conclude that Cook's allegations triggered State Farm's duty to defend.

The district court held that Brown's actions were not directly related to Church "operations" under the D&O Provision. Pastor Brown swore his actions in this case "were in furtherance of a ministry of the Church." *Word of Life Church of El Paso v. State Farm Lloyds*, No. 17-cv-00049, 2018 WL 297617, at *7 (W.D. Tex. Jan. 4, 2018). But the district court concluded that because

---

[5] At oral argument, State Farm also argued that the incidents in question were not committed "solely in the conduct of [Brown's] management responsibilities for the church" as required by the Policy. In his brief, Brown argued that he acted in a management capacity, and State Farm cited nothing to the contrary. Indeed, State Farm did not raise any separate argument about "management" in its summary judgment motion below or in its brief to this court, and the district court did not mention it, so we decline to address it. *See City of Alexandria v. Brown*, 740 F.3d 339, 350 (5th Cir. 2014) ("Summary judgment may be affirmed on any basis *raised below* and supported by the record." (emphasis added)).

Brown acted "to help restore the rights of the voters" and because political activities like the recall campaign were not "typical of the operations of a religious organization." But the D&O Provision gives no indication that Church "operations" do not encompass voting rights work or other activities outside the realm of traditional church ministries. This case turns on whether the church's conduct was covered by its insurance policy. And that policy covered actions related to "the operations of *your* church," not a *typical* church. The District Court's perception of what is "typical" is not binding on the Word of Life ("your") church in fulfilling its own mission. We thus decline to adopt the district court's interpretation of the term.

2.    Criminal Acts Exclusion

However, State Farm also argues that the D&O Provision's criminal acts exclusion bars coverage, thus negating its duty to defend. The district court did not reach this issue. We now conclude as a matter of law that the exclusion did not bar State Farm's duty to defend.

Under the eight corners rule, State Farm had a duty to defend "if the facts alleged present[ed] a matter that could *potentially* be covered by the insurance policy." *Ewing*, 420 S.W.3d at 33 (emphasis added). Here, Cook alleged facts supporting potential noncriminal violations of the Election Code. State Farm thus had a duty to defend.

Among other things, Cook alleged that EPTFV was "not a valid political committee under Texas or other law to support or promote any recall election effort in 2011." He asserted that Brown and WOL Church thus "illegally operated a political committee . . . in violation of the Texas Election Code."[6]

---

[6] Cook also asserted that WOL Church was liable under Texas Election Code § 253.094 and "any other applicable provisions of the Texas Election Code." Cook sought damages, which are available based only on a "knowing" violation of the Texas Election Code. But he also pursued injunctive and declaratory relief, which are available to remedy Election Code violations even without a culpable mental state. *See* TEX. ELEC. CODE ANN. § 273.081 ("A

Such allegations presented a potential violation of Texas Election Code § 253.096, which states that "[a] corporation . . . may make campaign contributions from its own property in connection with an election on a measure only to a political committee for supporting or opposing measures exclusively." TEX. ELEC. CODE ANN. § 253.096. Section 253.096 does not specify that a violation of that provision is a criminal offense. Cook thus alleged possible noncriminal conduct that the Policy at least potentially covered, so State Farm had a duty to defend. *See GuideOne*, 197 S.W.3d at 310.

## B. Genuine Fact Issues Exist As to Whether State Farm Had a Duty to Indemnify.

### 1. "Operations of Your Church"

The duty to indemnify and the duty to defend "enjoy a degree of independence from each other." *D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–44 (Tex. 2009). Thus, prevailing on one does not guarantee prevailing on the other. *Id.* Unlike the duty to defend, the duty to indemnify turns on the "facts actually established" in the underlying litigation. *GuideOne*, 197 S.W.3d at 310. Courts thus consider evidence in determining whether a duty to indemnify exists. *See Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 334 S.W.3d 217, 219 (Tex. 2011); *D.R. Horton-Tex.*, 300 S.W.3d at 744. In this context, "the insured carries the burden to establish the insurer's duty to indemnify by presenting facts sufficient to demonstrate coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008).

---

person who is being harmed . . . by a violation . . . of this code is entitled to appropriate injunctive relief to prevent the violation from continuing . . . ."); *see also id.* § 253.096 (regulating corporate political contributions without specifying a required mental state or creating a criminal offense for a violation of the statute).

No. 18-50108

Here, the district court concluded that State Farm had no duty to indemnify Brown. It noted that "Brown's only evidence . . . that the recall election was a ministry of the Church are his own self-serving statements" in an affidavit he filed. It further noted that Brown's disclaimer on the Church website and the fact that the recall petition at WOL Church was available off church property "undermined" Brown's argument. The district court determined that Brown "offered no competent summary judgment [evidence] that corroborates his self-serving testimony." It concluded that no reasonable jury could find that Brown's actions in the recall campaign were "directly related to the operations" of the Church.

We disagree. "A party's own testimony is often 'self-serving,' but we do not exclude it as incompetent for that reason alone. Instead, an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *C.R. Pittman Const. Co. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011).[7] Here, Brown's affidavit set forth material facts[8] regarding whether his actions were directly related to the Church's operations. As discussed above, "typicality" is not the question, what "your church's" operations are constitutes the question. *Cf. Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 197 (2012) (Thomas, J., concurring) (Addressing employment liability and stating: "[I]t is a significant burden on a religious organization to require it, on pain of substantial liability, to predict which of

---

[7] "An unpublished opinion issued after January 1, 1996 is not controlling precedent, but may be persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 & n.7 (5th Cir. 2006).

[8] For example, Brown stated: "Through my leadership, as a church, we became involved in the recall effort as a ministry because we believed that these public officials were creating government policy that we believed harmed the church . . . ." He further asserted that "[b]y advertising the recall effort on the church's website, I was not only communicating this effort as a ministry of our church, through my leadership, as a church we were also seeking additional supporters for our church."

its activities a secular court will consider religious. The line is hardly a bright one, and an organization might understandably be concerned that a judge would not understand its religious tenets and sense of mission.") (quoting *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 336 (1987). That Brown's affidavit contradicted his previous disclaimer on the Church website is similarly unavailing. Brown's previous unsworn disclaimer does not nullify his sworn affidavit. Additionally, the rulings against the Church in the Cook litigation were based upon Brown's conduct, suggesting that they were, indeed, "related to the operations of" the Church. As a result, a genuine issue of material fact exists regarding whether Brown's actions were "directly related to the operations of" WOL Church and thus subject to indemnity by State Farm.

2. Criminal Acts Exclusion

State Farm also argues that the criminal acts exclusion bars its duty to indemnify. Unlike the general coverage question, State Farm has the burden of proof of an exclusion. *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 350 (5th Cir. 2005). Thus, it cannot rely on any failures of proof by Brown to prevail on a summary judgment: it must prove that there are no genuine issues of material fact and that it is entitled to prevail as a matter of law. *See id.*; *see also* FED. R. CIV. P. 56(a).

The state court of appeals found that WOL Church violated Texas Election Code §§ 253.094(b) and 253.096. *Cook*, 385 S.W.3d at 603. It also concluded that "violations of Section 253.031(b) . . . have occurred." *Id.* at 606.[9]

---

[9] Section 253.031(b) prohibits a political committee from "knowingly accept[ing] political contributions totaling more than $500 or mak[ing] or authoriz[ing] political expenditures totaling more than $500 at a time when a campaign treasurer appointment for the committee is not in effect." TEX. ELEC. CODE ANN. § 253.031(b). The provision does not clarify whether "knowingly" refers to simple knowledge of the act itself or knowledge that the act violates the Election Code. *See id.*

No. 18-50108

However, the district court concluded that a genuine issue of fact existed as to whether Brown's violations were unintentional. Criminality of these election offenses is based on "knowingly" committing the acts. *See, e.g.*, TEX. ELEC. CODE ANN. §§ 253.003, 253.031. The district court did not address this issue, but we conclude that State Farm did not prove as a matter of law that the acts in question were "criminal acts." We thus remand to the district court for consideration of this issue in the first instance.

## IV.   Conclusion

For the foregoing reasons, we REVERSE the district court's grant of summary judgment in State Farm's favor on the D&O duty to defend and indemnify issues and REMAND the case for further proceedings consistent with this opinion. We otherwise leave intact the district court's judgment.

No. 18-50108

ANDREW S. OLDHAM, Circuit Judge, joined by EDITH H. JONES, Circuit Judge, concurring:

Pastor Brown swore his actions in this case "were in furtherance of a ministry of the Church." *Word of Life Church of El Paso v. State Farm Lloyds*, No. 17-cv-00049, 2018 WL 297617, at *7 (W.D. Tex. Jan. 4, 2018). The district court disregarded that testimony. It did so because, in its view, "political campaigning" is not "an activity typical of the operations of a religious organization." *Id.* at *7 n.37. Perhaps that's right. Perhaps that's wrong. Either way, it's not the role of a federal judge to tell a church whether its activities are "typical." Our job is to decide cases.

This case turns on whether the church's conduct was covered by its insurance policy. And that policy covered actions related to "the operations of *your* church," not a *typical* church. Thus, there was no need for the district court to impose "a significant burden on" the church by making "substantial liability" turn on "which of its activities a secular court will consider religious." *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 197 (2012) (Thomas, J., concurring) (quoting *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos*, 483 U.S. 327, 336 (1987)).

The Court's opinion stops short of explaining why these principles matter to the remand in this case. Civil judges, who may or may "not understand [a church's] religious tenets and sense of mission," must be ever mindful of the First Amendment in cases like this one. *Hosanna-Tabor*, 565 U.S. at 197 (Thomas, J. concurring). That caution is particularly important where the church's activities might strike some as "atypical."

14